HENNING (FARMERS' LOAN & TRUST CO. v.). See Case No. 4,666.

---

## Case No. 6,366.

HENNING et al. v. UNITED STATES INS. CO.

[2 Dill. 26.] [1]

Circuit Court, E. D. Missouri. 1872.

MARINE POLICY — CONSTRUCTION — PAROL CONTRACTS OF INSURANCE—CHARTER OF DEFENDANT AND STATUTES OF MISSOURI CONSTRUED.

1. Declaration construed, and first count held to set forth a parol contract by an insur-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ance company to insure the specific cotton sued for.

2. The parol contract of insurance set up in the declaration held to be valid, and not to be prohibited by the charter of the defendant, or by the statutes of Missouri, the provisions of which in this respect are considered.

3. The decision of the supreme court of the state to the contrary held not to be binding upon this court. Treat, J., dissenting on this point.

4. Where by the terms of a written policy of marine insurance the city of St. Louis was to be one of the termini of all risks it embraced, it cannot be extended to other and different risks by an averment that the policy was so "understood, construed, and intended by the parties;" but there may be a new parol contract to insure such different risks, and this new contract may refer for part of its terms to a pre-existing written contract of a similar character between the parties.

In this cause an amended declaration was filed to the October term, 1871. The defendant filed pleas of non-assumpsit, and the statute of limitations of five years. To this there was a replication, confessing and avoiding, and defendant demurred. The court, on argument, overruled the demurrer, and the defendant rejoined, tendering an issue. Plaintiff [Hening & Pearce, surviving partners] joined issue. Two additional counts were filed to the April term. To these defendant demurred generally. At the argument, it was suggested by the court that, in order to accomplish anything effectual by this preliminary discussion, it would be desirable that the policy declared on in the second and third counts, together with the charter of the defendant, should be before the court. Thereupon, it was agreed to withdraw the pleas to the first count, and to file a general demurrer to the whole declaration; the court, in considering the matters of law presented, to have before it the policy (including the books which make part of it) and the defendant's charter. The declaration as amended contains three counts; and the demurrer to each of which raises the questions to be decided. All of the counts refer to a written policy issued by the defendant to Hening & Woodruff, June 1, 1855.

The words of the policy, so far as the same (exclusive of the books annexed to it) are illustrative of the points under consideration, are as follows: "The United States Insurance Company, of St. Louis, Missouri, do make insurance, and cause to be insured, lost or not lost, Messrs. Hening & Woodruff, or whom it may concern, on all shipments made to them, including ten per cent. additional to invoice, at and from any ports and places, to and from St. Louis, said shipments to be covered by this policy, on good steamboats, canal boats, and steam and sail vessels, and also by railroad, and the same to be reported to the company for endorsement on the policy as soon as known, and each package subject to its average, this policy will also cover all shipments made

by said assured, or to their address at St. Louis, from the Upper Mississippi, Illinois, or Missouri rivers; said shipments from the Missouri river to be made on good steamboats, and from the Upper Mississippi and Illinois rivers, to be made on good steam or canal boats or barges (such as have the inspector's certificate) towed by a steam vessel. Goods and produce from the upper rivers to be entered, and in case of loss, to be paid for at the cash value, in St. Louis, at time of such loss. Such shipments to be entered in a book annexed to this policy, and hereby made a part of it. It is understood that goods and produce covered by this policy shall be for the one-half (½) of said shipments, the other half being insured elsewhere, and to be taken at the usual rates, premium to be settled for at the end of each and every month. Amounts under $50, in cash, when over $50, by a note at four months; in either case a discount of twenty-five per cent. to be made."

The defendant was chartered by the state of Missouri, February 24, 1855. The charter provides: "The company hereby established shall have power to make insurance on life or lives, and to grant annuities, and to make insurance for the benefit of survivors; but all the conditions of policies issued by said company shall be printed or written on the face thereof." Section 3. Section 4 declares: "The company hereby created shall have full power and authority to insure all kinds of property against loss or damage by fire, to make all kinds of insurance against loss on property of every kind, in course of transportation, whether happening on land or water, to make such other insurance as they may deem proper and expedient, and to re-insure themselves against loss or any risk which they may have taken, and generally to do and perform all necessary matters and things connected with these objects or either of them." Section 5 fixed the time and mode of election of thirteen directors. "Sec. 6. The directors regularly chosen by the stockholders of the company, shall, as soon as may be after every annual election, choose out of their body one person to act as president and one as vice-president. The first named shall preside at all meetings of the directors; in case of his absence or death, the vice-president shall perform his duties; either of whom with the secretary or actuary, shall sign the policies or contracts made by order of the board of directors; which contracts shall be binding with or without the seal of said corporation, and shall do and perform such other acts and things as may be prescribed in the company's by-laws." The General Statutes of Missouri upon the subject of corporations in force at the time of the charter of the defendant, declares that all charters thereafter granted shall, unless otherwise expressed, be subject to the provisions of the general law respecting corporations; and section 8, p. 232, Rev. Code 1845, declares that "parol contracts may be binding on aggregate corporations if made by an agent duly authorized by a corporate vote, or under the general regulations of the corporation; and contracts may be implied on the part of such corporations, from their corporate acts, or those of an agent whose powers are of a general character." The defendant was not released from, but, by implication, subjected to, this provision of the general law.

The first count in the declaration, after setting forth the original policy of June 1, 1855, and certain subsequent verbal modifications thereof, its continued existence in force, and the acts of the parties under it, alleges as follows: "And on the 25th day of March, in the year 1864, the said Hening & Woodruff proposed to the said defendant that all cotton on any boat, for or on account of William Butler & Co., from Red river or its tributaries, or the Yazoo river and its tributaries, or any tributary of the Mississippi, should be considered, treated, and regarded as insured in and by the said open policy, dated, as aforesaid, June 1, 1855, and modified, as hereinbefore stated, by verbal agreement, and the said defendant, on or about the first day of April, 1864, accepted the said proposal, and agreed verbally with the said Hening & Woodruff that all the cotton of William Butler & Co. on any boat from the Red river or its tributaries, or the Yazoo river or its tributaries, or from any tributary of the Mississippi, should be entered in the book annexed to the said open policy of the said Hening & Woodruff; that the said Hening & Woodruff should pay in respect thereof the usual rates of premium, and that the same should be taken, treated and regarded by the defendant as insured for the said Hening & Woodruff, on account of whom it might concern, according to the terms and conditions of the said open policy, and that the loss thereof, if any, should be paid by said defendant to the said Hening & Woodruff, for whom it might concern, and that the payment of the premiums thereon, and the settlement of the accounts in respect thereof, should be made monthly by said Hening & Woodruff, as provided in and by the terms of said open policy, and after the said agreement was so as aforesaid made, the said Hening & Woodruff, and the said defendant, carried the same into execution by causing all the cotton of the said William Butler & Co., on any boat from the Red river or its tributaries, or the Yazoo river, or its tributaries, or from any tributary of the Mississippi river, to be entered and endorsed upon and in the said book annexed to said open policy of the said Hening & Woodruff with the said defendant, and the said Hening & Woodruff did pay to the said defendant, in respect thereof, the usual and customary rates of premium, and the defendant, fully under-

standing the said agreement so verbally made, and intending to carry the same into effect, did receive the said premiums from said Hening & Woodruff down to the accruing of the loss and the doing of the wrong and injury herein presently stated. And on the ninth day of June, in the year 1864, the said William Butler & Co. did ship, on the good steamboat Progress, from the mouth of the Red river, in the state of Louisiana, then bound for the port of Cairo, in the state of Illinois, seven hundred (700) bales of cotton, of great value, to-wit: of the value of two hundred and eighty thousand dollars ($280,000), to be delivered at the port of Cairo aforesaid, to the said William Butler & Co., for the mere purpose of complying with the regulations of the treasury of the United States in that behalf, and immediately thereafter to be forwarded and consigned to the said Woodruff & Co., at the city of New York. That the said Hening & Woodruff were then and there interested in the said cotton, and were, in fact, the legal owners thereof, as having advanced thereon the sum of fifty thousand dollars to the said William Butler & Co. for the purchase thereof, to be repaid to them out of the first proceeds of the sale of the said cotton by the said Hening & Woodruff at New York City, the said William Butler & Co. agreeing at the time of said advance to forward and consign the said cotton to the said Woodruff & Co. at New York City, to be by them sold on commission on account of said Hening & Woodruff; and as soon as the said cotton was so placed on board the said steamboat Progress, a bill of lading was given therefor to the said William Butler & Co., on which bill of lading the said Hening & Woodruff immediately caused a memorandum in writing to be made, that the same was insured in and by the open policy of the said Hening & Woodruff, meaning the open policy aforesaid of the said Hening & Woodruff with the said defendant; and immediately after the said shipment and the making of the said bill of lading, and the making thereon of the said memorandum, the said defendant had due and immediate notice of the making of the said memorandum and the shipment, to-wit: at St. Louis aforesaid; and the said Hening & Woodruff caused the said shipment to be immediately noted and entered upon the said book annexed to the said open policy of the said Hening & Woodruff with the said defendant, to-wit: on the 9th of June, 1864; and the said Hening & Woodruff were at all times ready on said day, and thereafter, to pay the said defendant the customary and usual rates of premium for insurance thereon, according to the terms of said verbal agreement with the said defendant by the said Hening & Woodruff made on or about the first day of April, 1864, and the conditions of said open policy. And afterwards, and while the said steamboat was as-

cending the river Mississippi, as aforesaid, on her way from the mouth of the Red river to the port of Cairo, in the state of Illinois, and while the said steamboat was in a part of the Mississippi called 'Dead Man's Bend,' said steamboat took fire and was destroyed, together with all of the said cotton so shipped on board of her by the said William Butler & Co., by means of the said fire and so the said cotton became burnt, and wholly, utterly, and totally lost by the said fire, which was one of the perils against which the said defendant promised to insure the said Hening & Woodruff in respect of said cotton, of all which the said defendant had due notice, to-wit: at St. Louis aforesaid, on the day of the happening of said fire, which was on the ninth (9th) day of June, 1864, and by reason thereof the said defendant became liable to pay to the said Hening & Woodruff the value of said cotton, to-wit: the sum of two hundred and eighty thousand dollars at the end of the month of June, 1864, less the usual rates of premium for insuring the same, which rates of premium were one per cent. of the value thereof. And being so liable the said defendant afterwards, to-wit: on the day and year last aforesaid, at the district aforesaid, undertook and faithfully promised to pay the said sum of money to said Hening & Woodruff, on the last day of June, 1864," etc.

The second count is like the first, except that it alleges that the subsequent modifications of the written policy of June 1, 1855, were made by memoranda in writing by the defendant, and annexed to the said open policy, and that the defendant, by such a memorandum, in writing, insured the said cotton shipped as aforesaid by Butler & Co. on the 9th day of June, 1864, on the steamer Progress, from the mouth of Red river to the port of Cairo.

The third count, after setting forth the policy of June 1, 1855, alleges, inter alia, as follows: "That after the making of said contract of insurance, to-wit: on the first day of September, A. D. 1862, by a memorandum in writing, indorsed and written in and upon said policy book, a part of said contract of insurance, as hereinbefore stated, and duly assented and agreed to by said Hening & Woodruff and said defendant, it was understood and agreed that the goods and produce covered by said policy should be for the full amount of said shipments, instead of the one-half thereof as theretofore; and from and after the date last aforesaid, defendant, by virtue and in pursuance of said contract or policy of insurance as understood and construed and intended to be understood and construed by and between said Hening & Woodruff and said defendant, did insure and cause to be insured all shipments made by said Hening & Woodruff, or by any other parties in which said Hening & Woodruff had an interest, at and from any and

all ports and places to and from any and all ports and places upon the Mississippi river and its tributaries and other navigable waters, irrespective of the place of shipment or the point of destination, which shipments were from time to time duly entered in said policy book, and settled for as afore-stated, for a long term of years." The said shipment of cotton by Butler & Co. on the 9th day of June, 1864, on the Progress, from Red river to Cairo, is then alleged, and also the value thereof and the plaintiff's ownership or interest therein as before; and it is also averred that "immediately upon the delivery of said cotton to said steamboat Progress, and upon the day and year last aforesaid, the master or agent thereof did execute and deliver to said Butler & Co. a bill of lading therefor in the usual form, and said Butler & Co. delivered the same to said Hening & Woodruff, who caused to be indorsed thereon, in the usual course and manner of business between said Hening & Woodruff and said defendant, the words, in effect, as follows, to-wit: 'Insured in Hening & Woodruff's open policy,' meaning the policy aforesaid, and in the usual time, to-wit: on the fifteenth day of June, eighteen hundred and sixty-four, the said shipment was duly indorsed upon said policy of insurance, and entered in said policy book, whereby the same became and was covered by said policy; of all which defendant was duly notified, and said Hening & Woodruff, at the end of said month of June, eighteen hundred and sixty-four, and at all times, were and have been ready and willing, and offered to pay the premium reserved and provided for in said policy, and afterwards, to-wit: on the ninth day of June, 1864, and while said steamboat Progress was duly prosecuting her voyage on the Mississippi river aforesaid, from the mouth of Red river to Cairo aforesaid, and at a point on said river called 'Dead Man's Bend,' the said steamboat took fire, and both the said boat and the said seven hundred bales of cotton were consumed and totally destroyed; and the said cotton became and was wholly and totally destroyed by the said fire, which was one of the perils against which defendant, by its said open policy, did assure the said Hening & Woodruff, of all which said defendant afterwards, to-wit: on said ninth day of June, A. D. 1864, had due notice, by reason whereof defendant became and was liable to pay to said Hening & Woodruff the value of said cotton," &c.

Thos. T. Gantt and George P. Strong, for plaintiff.

Glover & Shepley and Sharp & Broadhead, for defendant.

DILLON, Circuit Judge. Upon consideration, we decide:

1. That the first count of the declaration sets forth a verbal contract by the defendant to insure this specific cotton; that in the absence of any restraining provisions in the charter of the defendant, or in the laws of the state applicable to the defendant, a parol contract of insurance is valid; that the laws of the state respecting corporations, so far from prohibiting, allow parol contracts to be made, and recognize the validity of implied contracts by corporations (St. 1845, p. 232, § 8); that the charter of the defendant, construed in the light of the general law, does not disable it from making a binding contract of insurance without writing. The charter directs that "all the conditions of policies issued by the company shall be printed or written on the face thereof," and that certain named officers "shall sign the policies or contracts made by order of the board of directors;" but these provisions, especially when viewed in connection with the general law of the state, cannot be held to prevent the company from making oral contracts of insurance, nor from being held liable upon implied contracts of insurance in accordance with the general and established principles of law.

2. If the decision of the supreme court of Missouri, when this cause was before it (47 Mo. 425), is to be considered as holding an opposite view, it is not conclusive upon this court, although entitled to great respect and consideration. The contract alleged is one relating to general commercial law, and in such cases the federal courts, when their power is judicially invoked, must determine for themselves, both as to the power to make the contract and its true construction. Butz v. Muscatine, 8 Wall. [75 U. S.] 584; Bank v. Skelley, 1 Black [66 U. S.] 436, 443; Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175, 205; Leffingwell v. Warren, 2 Black [67 U. S.] 599; King v. Wilson [Case No. 7,810].

In this view, as to the effect of the decision of the state court, KREKEL, J., concurs, but TREAT, J., differs, he holding that it is conclusive upon the federal court as to the power of the corporation to make the contract. The demurrer to the first count is therefore overruled.

3. The second count alleges the contract to insure this specific cotton to be in writing. And if (as the demurrer admits) the averments thereof are true, the plaintiffs have a cause of action. We do not now determine whether the entries appearing on the books annexed to the open policy establish the truth of the averment that there was such a contract in writing as this count sets forth. The statements in this count as to the legal effect of the written policy of June 1, 1855, as to termini of shipments, are, in our opinion, erroneous, for the reasons stated in the ruling upon the third count of the declaration.

4. In substance, the third count is one upon the original policy of June 1, 1855, which, it is alleged, covered by its own terms and

effect ("as understood, construed, and intended to be understood and construed," by the parties), this shipment of cotton in 1864 by Butler & Co. to themselves, from the mouth of Red river to Cairo. The allegation is that the original policy, when properly construed as intended, extends to and covers by its own force, effect, and operation, "all shipments made by said Hening & Woodruff, or by any other parties, in which said Hening & Woodruff had an interest, at and from all ports and places, and to and from all ports and places, upon the Mississippi river, irrespective of the place of shipment or the point of destination."

To this construction of the policy of June 1, 1855, we cannot give our sanction. It cannot mean one thing in 1864 and another in 1855. Where the terms of a policy are not clear, we may resort to usage, and the course of dealing under it the better to enable us to ascertain what the parties meant by the use of such terms, but no further. By its terms we think it plain that St. Louis was to be one of the termini of all risks which it was intended to embrace, and that it cannot be held of its own unaided force and effect to extend to a shipment of cotton in the name of other parties from a place on the Mississippi river to the port of Cairo, although Hening & Woodruff may have been interested in such shipment.

In this view of the third count, the demurrer thereto is well taken, and must be sustained. Of course, it is not intended to deny that a written contract may be modified, and either enlarged or restricted by a subsequent valid parol agreement. But if any such parol agreement was subsequently made whereby a risk was insured which was not embraced in the original contract, the rights of the plaintiff arise under such subsequent parol contract, and must be determined by it. It is in this event a "new" contract, and it is a "parol" contract, although it may refer for part of its terms to another contract in writing of a similar character existing between the parties; but such reference does not make the new contract a written contract, nor does it alter the meaning, force, or operation of the written contract. Judgment accordingly.

NOTE. Subsequently, at the September term, 1872, the cause was tried before Mr. Justice Miller, and Treat, J. and a jury, which rendered a verdict for the plaintiff for $178,280. To a proposition to reopen the questions of law decided on demurrer in the foregoing opinion of the circuit judge, Mr. Justice Miller is reported as saying, that such a course is not only against the settled practice of the court,—Appleton v. Smith [Case No. 498],—but if the propositions ruled heretofore were now open, he sees no reason to doubt, after what has been said by counsel, that they were ruled correctly.