KEENE FIVE CENT SAV. BANK v. REID et al.

RHODES v. SAME.

(Circuit Court of Appeals, Eighth Circuit.  April 6, 1903.)

Nos. 1,795, 1,796.

1. MORTGAGES—CONSTRUCTION—STIPULATION FOR MATURITY ON DEFAULT.

A provision in a mortgage that in case the sum secured, or any part thereof, or any interest thereon, is not paid when the same is due, or if the taxes assessed against the property, or any part thereof, are not paid when the same are by law made due and payable, "then the whole of said sum and sums and the interest thereon shall and by these presents become due and payable," is not self-operative, but is for the benefit of the creditor, and intended to give him an option, and it does not render the principal sum due and payable in advance of the time specified on the face of the note because of a prior default in the payment of interest or taxes, so as to start the statute of limitations to running, unless the holder elected in some way to treat it as due at an earlier time in consequence of the default.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF CONTRACTS.

The proper interpretation of a private contract presents a question of general law, concerning which the federal courts are entitled to express an independent judgment, unless the contract is one relating to the sale or conveyance of real or personal property, and it contains words or phrases that, in virtue of local decisions, have acquired a definite meaning, and have thus become rules of property within the state.

8. MORTGAGES—CONSTRUCTION—PROVISIONS IN NOTE FOR STATE LAWS.

A provision in a note that "this note and the coupons hereto attached * * * are to be construed by the laws of the state of Kansas" means the statutes of the state with reference to negotiable instruments, and the rights and liabilities of the parties thereto, and does not comprehend the decisions of local courts construing like contracts that had been or might thereafter be announced; nor can it be extended so as to make the decisions of the local courts the governing law with respect to the construction of the provisions of a mortgage given to secure such note.

Caldwell, Circuit Judge, dissenting.

Appeals from the Circuit Court of the United States for the District of Kansas.

This action was brought by the Keene Five Cent Savings Bank, a New Hampshire corporation, the appellant in case No. 1,795, and one of the appellees in case No. 1,796, to foreclose a mortgage on lands situated in Marshall county, Kan. The bill alleged, in substance, that Gavin Reid and Elmira Reid on October 14, 1886, executed a note in favor of Fanny U. Warden in the sum of $6,000, payable 20 years after date, with 20 interest coupons, for $420 each, thereto attached, and that as security therefor they executed the mortgage in question; that the taxes assessed against the mortgaged premises for the years 1889, 1890, 1891, and 1892 were not paid by the mortgagors, but were paid in August, 1895, by the complainant; that the taxes on the property for the years 1893 to 1897, both inclusive, were not paid by the mortgagors or any other person; that the mortgagors had failed to pay any of the coupon interest notes which became due annually on November 1st for the years 1891 to 1898, both inclusive; that the principal and interest notes secured by said mortgage, together with all the mortgagee's rights under said mortgage, were assigned by Fanny U. Warden to the complainant in June, 1889, to secure the payment of an indebtedness owing by said Warden to the complainant; that after such assignment, and in September, 1893, in a suit brought by one King, as receiver of the First National Bank of Frankfort, Kan., in the Supreme Court of New Hampshire, the complainant was garnished, by trustee process emanating from said court, as a creditor of said Fanny U. Warden, and compelled to answer as to the state of its account with her; that it did answer forthwith, showing that it then held the aforesaid notes as security for an existing indebtedness on the part of said Fanny U. Warden in the sum of $3,248.66; that thereupon the complainant was notified by one Harriet R. Warden that she was the owner of and entitled to whatever sum might be collected on said notes over and above the sum of $3,248.66 aforesaid; that a controversy accordingly arose between said last-named claimant and said King as to who was entitled to the surplus, in consequence of which the complainant could not, under the laws of New Hampshire, lawfully send said note and mortgage out of the state of New Hampshire into the state of Kansas until said controversy was determined; that it was not so determined until the year 1898, when T. F. Rhodes, having bought from King, as receiver, all the assets then in his hands as receiver, entered into an agreement with Harriet R. Warden and Fanny U. Warden whereby they released their claim to said notes, and consented that

¶ 2. State laws as rules of decision in federal courts, see notes to Spokane Falls & N. Ry. Co. v. Ziegler, 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

this plaintiff might proceed to collect the notes, and hold any surplus over and above the amount of its claim for the benefit of said Rhodes; and that thereupon the New Hampshire suit was dismissed in the month of July, 1898, and the complainant, being freed from all restraint, was permitted to proceed with the enforcement of the mortgage. The bill averred that during all of the period aforesaid Gavin Reid and Elmira Reid, the mortgagors, had occupied and used the mortgaged premises; that they had not paid any part of the principal indebtedness; and that the defendant T. F. Rhodes had a claim for taxes against the mortgaged premises which was prior in lien to the mortgage, the exact and true amount of which the complainant was unable to state. The complainant accordingly prayed that the amount of its demand might be ascertained and established, and for a decree of foreclosure. The defendant Rhodes filed an answer in which he admitted substantially all of the allegations contained in the complaint. He also filed a cross-bill, in which he asserted a tax lien, and prayed that the priorities of various liens existing against the property might be ascertained, and for general relief. The mortgagors filed an answer in which they admitted substantially all of the allegations contained in the bill, but they averred that the interest notes which matured on the 4th of November in the years 1890, 1891, 1892, and 1893 were not paid when they became due, and for that reason they insisted that the cause of action on which the complainants sue did not accrue within five years before the action was brought, and that the action could not be maintained. On a final hearing the lower court sustained the defense and dismissed the complainant's bill. It also dismissed the cross-bill which was filed by T. F. Rhodes. From this decree the Keene Five Cent Savings Bank and T. F. Rhodes have prosecuted separate appeals.

W. J. Gregg and J. D. Gregg, for appellants.

W. F. Guthrie, for appellant Keene Five Cent Savings Bank.

T. F. Garver (J. A. Broughten and J. B. Larimer, on the brief), for appellees Gavin Reid and Elmira Reid.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question to be determined on these appeals is whether the principal note, secured by the mortgage, together with the accrued interest thereon, became due and payable as soon as there was a failure to pay any one of the interest coupons, so that the statute of limitations began to run at the date of the default as against the entire indebtedness, without any affirmative action on the part of the holder of the notes, and even against its express will and consent. This question arises in the following manner: In the principal note this clause is found:

"It is expressly declared and agreed that this note and the coupons hereto attached are made and executed under and are to be construed by the laws of the state of Kansas in every particular and are given for an actual loan of six thousand dollars."

The mortgage which secured the note contained the following provision:

"But if said sum or sums of money or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable, or if the insurance be not kept up thereon, or if waste be committed, then the whole of said sum and sums and the interest thereon sh..."

and by these presents become due and payable and said party of the second part shall be entitled to possession of said premises."

It is a conceded fact that a default occurred in the payment of interest on the mortgage debt as early as November 4, 1890; that no interest was paid after that date; and that a statute of Kansas declares (Gen. St. Kan. 1901, § 4446) that an action "upon any agreement, contract or promise in writing" can only be brought within five years after the cause of action "shall have accrued."

It is obvious, therefore, that if the effect of the above-quoted mortgage clause was to render the entire indebtedness secured thereby immediately payable when the first default in the payment of interest, or any default, prior to November 4, 1896, occurred, whether the creditor did or did not elect to treat it as due, then the action is barred, and the decree below was for the right party. On the other hand, if the mortgage clause in question merely gave to the creditor an option to treat the indebtedness as due in case of a default, which he might or might not exercise at his pleasure, then the debt sued for was not due until the present action was brought, and the decree below is indefensible. The effect of such clauses as the one in question has frequently been a subject for judicial consideration, and, while the decisions are not entirely harmonious, yet the decided weight of reason and authority is in favor of the view that such provisions are not self-operative; that they are for the benefit of the creditor, and intended to give him, on grounds of convenience, the right to treat the entire debt as matured, if an installment of interest is not paid as and when it should be, or if the taxes on the mortgaged premises are not paid pursuant to agreement. The great majority of the cases treat such provisions, when contained in mortgages, as designed to further constrain and stimulate the debtor to meet his engagements promptly, and to arm the creditor with a right in the nature of a right to declare a forfeiture or to exact a penalty, which he may or may not exercise, and as a right which the courts will never regard as having been exercised by the creditor, or as having any effect upon the period of maturity specified in a note or bond, without some affirmative action on his part, such as a notification to the debtor, by a suit or otherwise, that on account of the default he elects to treat the entire indebtedness as due. Attention has also been called to the fact that to hold such provisions as the one in question to be self-operative would be to confer on the debtor the right to take advantage of his own wrong; that is, to mature an indebtedness which was intended as an investment for a given period, in advance of the time specified on the face of his note or bond, by failing to keep his engagements. Cox v. Kille, 50 N. J. Eq. 176, 24 Atl. 1032; Mason v. Luce, 116 Cal. 232, 48 Pac. 72; Richards v. Daley, 116 Cal. 336, 48 Pac. 220; Lowenstein v. Phelan, 17 Neb. 429, 22 N. W. 561; First Nat. Bank of Snohomish v. Parker (Wash.) 68 Pac. 756, 757; Watts v. Creighton, 85 Iowa, 154, 52 N. W. 12; Batey v. Walter (Tenn. Ch. App.) 46 S. W. 1024; Nebraska City Nat. Bank v. Nebraska City Gaslight & Coke Co. (C. C.) 14 Fed. 763; Phillips v. Taylor, 96 Ala. 426, 11 South. 323. We are constrained, by the reasons stated in the foregoing decisions, to hold that such a

provision as the one now in question is not self-operative; that it did not render the principal note, secured by the mortgage, due and payable in advance of the time specified on its face, unless the creditor or holder elected in some way to treat it as due at an earlier period, in consequence of a default in the interest payments or in the payment of taxes. We are of opinion that this view of the case is altogether the most reasonable, the one which is most in accord with the presumed intention of the parties, and the one that is the best supported by authority. The previous decision of this court in Brewer v. Penn Mutual Life Ins. Co., 36 C. C. A. 289, 94 Fed. 347, was only to the effect that where a mortgage contains a provision in substance like the one now involved, and a default occurred in the payment of the interest, such default gave the holder of the note the right to declare the same due, and to collect it by a suit in the ordinary form, as well as to enforce payment by an action to foreclose the mortgage.

It is strenuously urged, however, that a different view has been taken by the Supreme Court of Kansas touching the effect of such a provision as we have been considering; that the court of last resort in that state holds that such a provision is self-executing, and that in case of a default it operates to mature an indebtedness without any affirmative action on the part of the mortgagee or creditor; and that these decisions are binding on this court, especially in view of the above-quoted clause, which is found in the note, declaring that it and the coupons attached should "be construed by the laws of the state of Kansas." It is not to be denied that in one case (First National Bank v. Peck, 8 Kan. 660) it was held, in a case involving the construction of such a clause as the one now before us, that, while such clauses are "usually inserted for the benefit of the mortgagee," yet that the mortgagor may likewise insist upon it, and that in the case then under consideration the occurrence of a default caused a note to become due in advance of the time specified on its face, in such a sense that one who acquired it after the default could not be esteemed a purchaser before maturity. The authority of this case has been recognized in two subsequent cases, to wit, Lewis v. Lewis, 58 Kan. 563, 50 Pac. 454, and Douthitt v. Farrell, 60 Kan. 195, 56 Pac. 9, both of which cases were decided long after the mortgage in suit was executed. Conceding that these cases, in effect, hold that the occurrence of a default in the payment of interest or in the failure to pay taxes under a mortgage containing the clause in question does cause a note to mature and start the statute of limitations from the time of the default, we turn to inquire how far, if at all, these decisions are binding upon this court.

It will be observed at the outset that these decisions do not deal in any respect with the construction of a local statute of the state, but exclusively with the meaning, scope, and effect of a provision found in a private contract; the question considered and decided being, when did a certain indebtedness mature, in view of all the provisions of the contract between the parties relative to the time of payment? No construction or interpretation of the local statute of limitations was required in either of these cases, or attempted. The statute on that subject was plain, and its application obvious, when

the time that the indebtedness became due or accrued was ascertained; and that depended entirely upon the meaning, purpose, and effect of the provision of the mortgage which we have already quoted. Now, it is a well-settled doctrine that the proper interpretation of a private contract presents a question of general law, concerning which the federal courts are entitled to express an independent judgment, unless the contract is one relating to the sale or conveyance of real or personal property, and it contains words or phrases that, in virtue of local decisions, have acquired a definite meaning, and have thus become rules of property within the state. When such is the case the federal courts will interpret a contract as the state courts would interpret it. Jackson v. Chew, 12 Wheat. 153, 6 L. Ed. 583; Suydam v. Williamson, 20 How. 427, 15 L. Ed. 978; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Bucher v. Cheshire R. Co., 125 U. S. 555, 584, 8 Sup. Ct. 974, 31 L. Ed. 795. But in ordinary cases which involve the meaning and effect of a contract a federal court will interpret it in accordance with general rules of law governing the construction of contracts, and will never hold itself bound to adopt a construction which has been placed upon the contract, or one like unto it, by the courts of a state, unless such construction appears to be sound and just. In a word, the federal courts have a right to express an independent judgment with respect to questions of commercial law, with respect to the construction of private contracts, and with respect to the liability of persons charged with the commission of torts, when the questions are not dependent on local statutes modifying the common law, but are to be adjudged in accordance with its principles. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Henning v. Insurance Co., 2 Dill. 26, Fed. Cas. No. 6,366; Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Bucher v. Cheshire R. Co., and Burgess v. Seligman, supra; Casserleigh v. Wood et al. (C. C. A.) 119 Fed. 308, 313. See, also, note to Griffin v. Overman, 9 C. C. A. 542, 548.

It is claimed, however, that in the present instance, by a clause inserted in the principal note, which has heretofore been quoted, the parties expressly agreed that their rights should be determined according to the laws of the state of Kansas, and that this means that the decisions of the Supreme Court of that state must be followed in determining the meaning and effect of all the provisions of the mortgage. There are two answers, we think, to this contention:

In the first place, the agreement relied upon is very explicit that "this note and the coupons * * * are to be construed by the laws of the state of Kansas." Nothing was said about the construction of another and very different instrument, to wit, the mortgage, whereby certain property was pledged to secure the payment of the note; and it would be an unwarranted extension of the scope of this clause to say that the parties stipulated that all the provisions of the mortgage should be construed by all courts as the Supreme Court of Kansas had or might thereafter construe it. Statutes have been enacted by the several states defining what are negotiable instruments, how they shall be drawn, what words of negotiability they shall contain, and the rights and liabilities of the parties thereto. The state of

Kansas has enacted such a statute. Vide Gen. St. Kan. 1901, c. 14. In-
deed, the statute of Anne, as re-enacted in this country, varies some-
what in the different states, and an instrument which might be deemed
negotiable and that would impose certain liabilities in one state, or by
the law merchant, would not have the same effect in another. In
our opinion, the clause now under consideration was inserted in the
note with reference to this well-known fact, for the purpose of making
it plain that its negotiability and other qualities must be tested by the
laws of Kansas, should any controversy arise. The language found in
the note, therefore, does not constitute an agreement between the
parties that the mortgage must perforce be construed as the local
courts would construe it.

In the second place, the agreement was that the note should be
construed "by the laws of the state of Kansas," and this means the
statutes of the state lawfully enacted, and there was no local statute
declaring what effect should be given to such a provision in a mort-
gage or other agreement as the one now under consideration. The
language employed does not comprehend the decisions of local courts
construing contracts like the one in hand, that had been or might
thereafter be announced, for such decisions were subject to revision
or modification or to be overruled by subsequent adjudications, so
that judicial decisions were in no sense laws of the state, such as the
parties to the note had in view. Since the decision in Swift v. Tyson,
16 Pet. 1, 18, 10 L. Ed. 865, it has never been supposed that the phrase
"laws of the states" comprehends decisions of the local tribunals,
unless they are decisions placing a construction on express statutes, or
establishing rules of property, as heretofore explained; and there is
no greater reason for supposing that the expression "laws of the state
of Kansas," as used in the note now under consideration, was intended
to include all local decisions, and make them, so far as they had any
application to questions that might arise, a part of the contract. That
view, in our opinion, is entirely untenable.

Holding therefore, as we do, that it is for this court to determine,
by the exercise of an independent judgment, what the provision in
the mortgage means, and that the provision, when properly construed,
is not self-operating, and that it did not and could not cause the note
to mature in advance of the period of maturity mentioned on its face,
and set the statute of limitations in motion, unless the holder of the
mortgage elected to treat the debt as due before that date, in con-
sequence of a default, and manifested such election in some appropriate
way, the decree below must be, and it is hereby, reversed, and the
cause is remanded to the lower court for further proceedings in ac-
cordance with this opinion.

CALDWELL, Circuit Judge (dissenting). The suit is to foreclose
a mortgage. The mortgage and notes are to be treated "as one
instrument or as contemporaneous agreements relating to the same
subject-matter." The provision in the note relating to the law by
which it is to be construed is to be read into the mortgage, and the
provision of the mortgage relating to the maturity of the mortgage
debt upon failure to pay any part of it at maturity is to be read into

the notes. This much has been distinctly decided by the Supreme Court of the United States in Moline Plow Co. v. Webb, 141 U. S. 616, 623, 12 Sup. Ct. 100, 35 L. Ed. 879.

By what law is the provision in the mortgage relating to the maturity of the mortgage debt to be interpreted and construed? There can be but one answer to this question. The well-settled rule on this subject is "that contracts are to be governed, as to their nature, their validity, and their interpretation, by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view." Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 453, 9 Sup. Ct. 469, 32 L. Ed. 788.

Under the operation of this fundamental rule, the contracts in suit are Kansas contracts, and are to be governed, as to their nature, validity, and their interpretation, by the laws of that state. This general rule was in harmony with the desire and intention of the parties to these contracts, but they were not willing to let the question rest on this general rule of law alone, and they accordingly made their own law on the subject, as they had an undoubted right to do, and declared, in terms, that the contract should be "construed by the laws of the state of Kansas in every particular." This provision, though found in the principal note alone, is, as we have seen, to be read into the mortgage. The contracts were made in Kansas, and, in express terms, the notes are payable there.

It is well settled that it is competent for the parties to a contract to agree as to what law shall govern in its construction and enforcement. Pritchard v. Norton, 106 U. S. 124, 136, 1 Sup. Ct. 102, 27 L. Ed. 104; Coghlan v. South Carolina R. Co., 142 U. S. 101, 109, 12 Sup. Ct. 150, 35 L. Ed. 951; London Assurance v. Companhia de Moagens, 167 U. S. 149, 161, 17 Sup. Ct. 785, 42 L. Ed. 113; Mutual Life Ins. Co. v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 458, 9 Sup. Ct. 469, 32 L. Ed. 788.

Moreover, the parties to a contract may provide their own statute of limitations, and may provide a different period of limitations from that provided by statute. 1 Wood on Limitations, § 42.

What was the legal effect of this contract when and where it was made? Manifestly, by the law of Kansas, as interpreted by the Supreme Court of the state, the default in the payment of any part of the mortgage debt at its maturity had the effect to mature the whole debt, and start the statute of limitations to running against the same.

Fifteen years before the mortgage in suit was executed, the Supreme Court of Kansas, speaking by Judge Brewer, now Mr. Justice Brewer, said:

"The mortgage was given to secure the payment of the three notes. It was executed contemporaneously with them. They form one contract, and are to be construed together, and so as to give force to the terms of each. 2 Pars. on Contr. 15; Round v. Donnel, 5 Kan. 56; Muzzy v. Knight, 8 Kan. 457. It contained this stipulation that, if any part of the money secured by it should not be paid when it became due, then all should immediately become due and payable. There is no contradiction between this and the notes. It might all have been placed in one instrument, and the contract thus set forth would have been consistent and clear. The payor, performing this contract,

would have six, twelve, and eighteen months, respectively, to make good his several promises, but, failing to keep his first promise, lost further time to perform the remainder. It was a contract the time of whose performance depended upon certain conditions. This clause is inserted in mortgages usually for the benefit of the mortgagee, but, being a valid stipulation, the mortgagor has equal right to insist upon it, and receive whatever advantage he can from its enforcement. When the payor at the expiration of six months failed to pay the note then due, by the terms of the contract all three notes became due. The statute of limitations began to run on all, and a subsequent purchaser purchased after maturity. The defendants therefore have a right to interpose any defense in this suit that they could if the original parties to the contract were the sole parties to the suit Basse v. Gallegger, 7 Wis. 446 [76 Am. Dec. 225]; Noyes v. Clark, 7 Paige, 180 [32 Am. Dec. 620]; 27 Eng. Com. Law, 27; People v. Superior Court of City of New York, 19 Wend. 104." National Bank v. Peck, 8 Kan. 660.

The doctrine of that case has been firmly adhered to from that time to the present. Stanclift v. Norton, 11 Kan. 218; Lewis v. Lewis, 58 Kan. 563, 50 Pac. 454; Douthitt v. Farrell, 60 Kan. 195, 56 Pac. 9.

All contracts which are construed within the state in which they are made and to be performed must be construed according to the law of that state. What is the law of the state? It is a grave error to suppose the law of a state consists only of its statutes. In Chamberlain v. Beller, 18 N. Y. 115, the Court of Appeals of New York said:

"The counsel for the appellants seems to assume that when the statute declares that the bond, to be valid, must be taken in a case 'provided by law,' it means statute law. This certainly is an error. Statutes, in this state, as every educated person knows, are not the only law. Some sanguine juridical philosophers have been aiming at that end, but the end yet remains to be attained. Until that judicial millennium shall have arrived, we must be content to submit to the law of unwritten principles as well as to that supposed to be more certain—of written rules."

Upon this very question Justice Brewer, when Circuit Judge, recognized the decisions of the courts of a state as constituting the law of the state on this subject, and, following that rule, decided a case in Nebraska contrary to his own convictions as to the law. He said:

"This has become the settled law of the Supreme Court of Nebraska and of the United States Circuit Court for this district, and, being a rule of property, must, upon the principle of stare decisis, be followed, irrespective of any personal opinions of the present judge." Richardson v. Warner, 28 Fed. 343.

In like manner the same learned justice gave effect to a decision of the Supreme Court of Missouri, and treated it as establishing the law of the state upon this question. He said:

"In the case of Noell v. Gaines, 68 Mo. 649, the question was presented to the Supreme Court of this state, and by it it was held that such stipulation was absolute and general; that it made all the notes due, and due for all purposes. * * * Independent of that decision, it is in accord with my own views of what the law is. It is elementary that where two instruments are executed at the same time, having reference to the same transaction, they are to be construed as though there was but one instrument. Now, here, according to the averments of this petition, this mortgage and this deed of trust were executed at the same time, and to secure these notes; they were parts and parcels of one transaction, and are to be construed as one instrument; and if there were but one instrument, and that containing a proviso to pay money at three separate times, with a promise that, upon a failure to pay the first sum at the time named, all should become due, I cannot see how, logic-

ally, we can escape the conclusion that the parties have made an absolute, unconditional stipulation, operative under all circumstances and for all purposes. I had occasion, when I was on the supreme bench of my own state, to consider this matter in two or three cases, and that was the conclusion I then came to, and it is unchanged. I am aware that Judge Hough, in his dissenting opinion, suggests certain contingencies in which the application of this rule, where there are several negotiable promissory notes secured by mortgages or deeds of trust, might work out some embarrassments, but still I do not think that the possibility of such embarrassments can avoid the clear force of the language the parties have used. I do not see why they cannot make such a contract, and if they made it, and its language is clear, I do not see why the courts should not give force and effect to it." Manufacturing Co. v. Howard (C. C.) 28 Fed. 741.

In London Assurance v. Companhia de Moagens, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113, the Supreme Court said, "Under the circumstances, we think that this contract of insurance is to be interpreted according to the English law." But by "English law" the court did not mean an act of Parliament, but the law of England as established by the decisions of its courts, and "by the usages prevailing at Lloyd's." "Referring, then," say the court, "to the English law upon the question as to the meaning of this language, the English courts many years ago decided it, and that has been adhered to ever since." And it was these decisions that constituted the law of England to which the court gave effect in that case.

As said by Justice Brewer in Richardson v. Warner, supra, decisions in cases like the one at bar establish a rule of property, and are binding on the federal courts. They affect rights and interests in real estate. Establishing, as they do, a rule of property, the doctrine as to the rule of decision in cases involving general questions of commercial law has no application.

The Kansas doctrine is held in Texas. Harrison Machine Works v. Reigor, 64 Tex. 89. In Moline Plow Co. v. Webb, 141 U. S. 616, 623, 12 Sup. Ct. 100, 35 L. Ed. 879, the Supreme Court of the United States made the following reference to the case last cited:

"A leading case in the Supreme Court of Texas on this subject is Harrison Machine Works v. Reigor, 64 Tex. 89. This was an action upon promissory notes payable at different dates, each containing an agreement to the effect that 'a failure to pay that note when due should mature both notes.' The note first falling due was not paid at maturity, and more than four years elapsed without suit. The question was presented whether limitation on the note last falling due commenced upon default in the payment of the one first maturing. It was held that it did, the court saying: 'That the effect of the agreement was to authorize suit or give a right of action upon the last note at the same time that it could be commenced upon the first, cannot be doubted. By the express terms of our statute of limitation, it commences to run from the time when the cause of action accrues. It is immaterial from what cause a note becomes due, so far as the right of the holder to enforce it by suit is concerned. * * * If the holder of a note may, at his option, treat the claim as due at a later date than the maker has agreed that it shall mature, and thus prescribe a different date at which it shall be barred, the evidence for its enforcement may be preserved, whilst that for its resistance may be destroyed, and thus the purpose of the statute be wholly defeated.' After referring to Hemp v. Garland, 4 Q. B. 519, as sustaining that view, but recognizing the fact that that case had been somewhat criticised on the ground that the facts brought it within the principle that no one is bound to take advantage of a forfeiture (Wood on Limitations, 296), the court proceeds: 'Admitting this to be a correct view, it cannot affect the present case. Here

no option was left to the creditor. He was forced to treat the debt as due. It is true, he was not obliged to bring suit upon it upon default in payment of the first note. Neither is any creditor compelled to sue upon a claim so soon as it becomes due. But the statute was put in motion without consulting his wishes, by the very terms of the contract, which neither party had any right to change without the consent of the other. When suit is left to the option of the creditor, and he fails to bring his action for the whole debt upon the nonpayment of one installment, the debtor may possibly be authorized to construe this as an exercise of option in favor of postponing the maturity of the unpaid installments. He may be justified in supposing that, if he had incurred a forfeiture, the creditor had elected not to take any advantage of it, and may be chargeable with knowledge that limitation would be computed accordingly. But if the creditor cannot postpone the maturity of the debt, and hence cannot waive the forfeiture, if such it can be termed, the debtor cannot, of course, be charged with notice that he has done so.' "

After making the foregoing quotations from the opinion of the Supreme Court of Texas, the Supreme Court say:

"Accepting this decision as giving the rule to be observed in the interpretation of the local statute, it remains to inquire whether, upon the mere default in the payment of interest, or upon such default continuing for ninety days, limitation began to run, without regard to any option upon the part of the payee or the holder of the notes. In determining whether the payee or the holder of the notes was compelled to treat them as due and collectible upon such default, we are to look at the deed of trust, and treat it and the notes as one instrument, or as contemporaneous agreements relating to the same subject-matter. The deed refers to the notes, and is itself referred to in each note, and may be examined to ascertain the real intention of the parties. Looking alone at the first clause of the notes, there would be some ground, under the case last cited, for holding with respect to each note that it would become due and collectible, without regard to the wishes of the holder, immediately upon default in paying interest. But this could not have been intended, because the deed of trust, referring to the several notes, provides for the whole debt, as well as the interest, becoming due and payable, if at any time the interest shall remain unpaid, after maturity, for as much as ninety days. We think, however, that the words in the deed of trust, 'at the option of said third party,' the payee or holder of the notes, refer not only to a foreclosure, but equally to the clauses in the notes and in the deed of trust relating to the maturity of the principal in the case of a default in the payment of interest. In other words, the principal, in either of the contingencies named, might become due and payable in advance of the time specifically named in the respective notes, at the option of the payee or holder. If this be not the correct interpretation, it would follow that the payee or holder of the notes, notwithstanding the words 'at the option of said third party,' which words are admitted to have given an option, at least, as to the foreclosure of the deed of trust, would be compelled to bring his suit for foreclosure within four years from default in the payment of interest at maturity, or at least within four years after the expiration of ninety days from such default."

While the Supreme Court, in the case from which we have quoted so extensively, held the statutes of limitations did not run in that case, the decision was rested upon the ground that the default in the payment of the interest did not render the whole debt due and payable, because by the terms of the deed such default was to have that effect only "at the option of said third party." In the case at bar there is no such provision.

The parties to the notes and mortgage expressly agreed that their legal rights should be determined "in every particular" by the laws of Kansas, where the contract was made and by its terms to be per-

formed, and where the parties to it resided. There is no rule of commercial or other law that can nullify this contract. It has the same binding obligation as any other valid contract. It is conceded, if this suit had been brought in a court of the state, the defendant could have successfully pleaded the statute of limitations. This would be his right by virtue of the terms of his contract and by the law of the state, and this right and that law cannot be nullified by the transfer of the notes to a nonresident of the state, who can sue in the federal court. The law of Kansas on this subject is settled by a long and uniform train of decisions of its Supreme Court as effectually as if it was written in the statutes of the state; and the law thus settled is as binding and obligatory on the federal court as a statute would be, and that a statute would be binding is conceded. It is a new and startling doctrine that the federal courts will enforce a supposed rule of commercial law or construction against the express contract of the parties and the settled law of the state in which the contract was made and to be performed and the parties resided.