CASLER et al. v. CHASE, Appellant.

**Division Two, February 26, 1901.**

1. **Appellate Practice:** MOTION FOR NEW TRIAL: NO EXCEPTIONS. Where there were no exceptions saved to the action of the trial court in overruling the motions for a new trial and in arrest, only such errors as seem to appear upon the face of the record proper can be noticed in the appellate court.

2. **Pleading:** OMISSION OF MATERIAL ALLEGATION: CURED BY ANSWER. In an ejectment suit brought by the father as guardian and curator of his infant child, it should be alleged in the body of the petition that such father is the guardian of such minor, duly appointed and qualified as such. Such allegation is material, but its omission may be cured by an admission or statement in the answer that such father was "the guardian" of such minor and "the natural guardian of such infant child."

3. **Judgment:** SETTING OUT NAMES OF PARTIES. The names of the parties in whose favor a judgment is rendered should be set out in full, and where this is not done it may be corrected on motion, and as the defect does not go to the substantial rights of the parties, the judgment should not on that account be reversed.

4. **Ejectment:** AMOUNT OF DAMAGES. The petition laid plaintiff's damages at $100, but the judgment was for $225. But it was a part of the written agreement between the parties that "the plaintiffs have been damaged in the sum of —— dollars to be fixed by the court, for which they shall have judgment if they recover in the cause." *Held*, that the judgment must stand, on the theory that defendant can not complain of an error which he by his own solemn agreement brought about.

Appeal from Livingston Circuit Court.—*Hon. E. J. Broaddus*, Judge.

AFFIRMED.

*F. S. Miller* and *Scott J. Miller* for appellant.

They got possession of all the land; got defendant's $400 paid in extinguishing a lien on said land; sued for $100 damages and got judgment for $225; in other words, got the land back and got nearly as much money in damages as the defendant was compelled to pay for the land. This is a straight case of getting something for nothing and $225 to boot. This is entirely too harsh and unjust, under the law and the facts, for this court to permit to stand. The error alone in giving a greater judgment for damages than asked for in the petition should reverse this case. Bogart v. Bogart, 138 Mo. 429.

*Sheetz & Sons* for respondents.

No exceptions were saved by appellant to the action of the court in overruling his motions for a new trial and in arrest of judgment; and there is nothing for this court to review. State ex rel v. Hitchcock, 86 Mo. 231.

BURGESS, J.—This is an action of ejectment for the possession of the southeast quarter of section nineteen, township fifty-seven, of range twenty-three, in Livingston county.

The following facts were agreed upon and reduced to writing:

"It is admitted that Martha Casler, formerly Martha J. McReeves, is the common source of title; that she departed this life on the — day of —, 1892, in the county of Livingston and State of Missouri, leaving a will which is hereby considered in evidence.

"That plaintiff, John Casler, and the said Martha Casler, were married on the — day of —, 18—, and that the said plaintiff, Casler, was her husband, and the plaintiff, John H. Casler, was their child, and is now living, aged about seven or eight years.

"That said Martha Casler bought the premises in suit on February 2, 1890, as shown by the county record, while she was the wife of said John Casler, and filed her deed for record February 11, 1890, in the recorder's office of Livingston county, Missouri. That she used said premises in connection with the northwest quarter of section 19, township 57, range 23, which adjoins the premises in suit, and altogether constituted her homestead, unless Mrs. Gray has land in between and shown by record. That at the time of her death, all the real estate she owned did not exceed in value $1,500, nor number of acres 90; and at the time of her death she was living upon the northwest quarter of section 19, aforesaid, with plaintiff John Casler as her husband and with her family, and was occupying all the premises herein mentioned, as the homestead.

"That Martha J. McReeves had been married prior to her marriage with John Casler, and at the time of her death had children surviving her by said marriage, to the number and names as shown in her said will hereinbefore mentioned.

"That defendant bought the premises in suit at the sale made by the administrator of the estate of Martha Casler, and claims title to said premises under and by virtue of said administrator's deed, which is considered in evidence, subject to any and all objections of plaintiffs, and took possession of said premises under said deed on the tenth day of April, 1894, and was in possession thereof at the time this suit was brought and is now in possession thereof.

"That the monthly rents and profits of said premises are $55 or $4.60 per month. That the plaintiffs have been damaged in the sum of ———— dollars, to be fixed by court, for which they shall have judgment if they recover in this cause.

"That all the probate papers and records in the estate of Martha Casler, now on file and in the probate office of Living-

ston county, Missouri, may be considered in evidence, subject to any and all objections of either party.

"That John Casler was the husband of said Martha Casler, and that John H. Casler is their child and that John Casler is the duly and legally appointed and qualified guardian and curator of said John H. Casler, an infant child.

"That the deed of trust to Moss and McWilliams was given in payment of the purchase price of the within premises sued for.

"That either party may offer any other, further and additional testimony on the hearing of this cause, that they may desire. Any errors may be corrected in trial."

The will of Martha Casler reads as follows:

"I, Martha Casler, in view of the uncertainty of life and certainty of death, in the name of God, Amen.

"I do will and bequeath all the property that I may die possessed of, in the following manner:

"*First.*—I will that all my funeral expenses and all my just debts shall be paid.

"*Second.*—Whereas, I have a husband, John Casler, I will and bequeath to said husband the sum of five hundred dollars in checks on the National Bank of New York, which I will give to some responsible person to give said Casler after death.

"*Third.*—Whereas, I have children of my own blood, Aaron McReeves, William Oliver McReeves, Margaret Ann McReeves, by name at present Margaret Ann Gates; Martha Ellen McReeves, present name Martha Ellen Williams; Anna Belle McReeves, present name Anna Bell Waters, Cate Almira; all by my first husband, Stephen McReeves, and John H. Casler, by my present husband (John Casler).

"*Fourth.*—Now, therefore, I will and bequeath to each of the above named children, equal shares in all of the prop-

erty I may die possessed of, both real and personal, except my last named child, which I will separately more than the other children, one roan mare about eight years old with the increase, and one roan cow with her increase.

"And further, I bequeath and will to my daughter, Martha Ellen McReeves, separately and more than the other named children, one bay mare five years old; and whereas, I have an unknown amount of corn on my premises, that whatever shall remain after my hogs are marketed, I will the same to be sold, and the proceeds to be equally divided among the above named children.

"And further, I have my real estate rented and am to receive for the same one-half the crop. Now, therefore, I will that said one-half (my share) to be sold at gathering time, and proceeds to be equally divided among the above named children.

"And further, I am heir to an estate in Pennsylvania. I will and bequeath to each of the above named children equal shares in what I may die heir to in said estate."

It seems that while Martha Casler was the owner of the land in question, which contained about thirty-two acres, and at the time of her death, she in connection with her late husband and their son were living upon the northwest quarter of said section nineteen, and were occupying all the lands owned by her, not exceeding ninety acres, nor in value $1,500, as their homestead.

She purchased the land from Moss and McWilliams, on the eleventh day of February, 1890, and at the same time, her husband Casler joining with her, gave them a deed of trust upon it to secure the payment of $360, being a part of the purchase money. This debt was reduced by payments to about the sum of $169, which was still due at the time of the death of Mrs. Casler, which occurred on the thirteenth day

of April, 1893. At the time of her death she left six children by a former marriage, and one child, John H. Casler, Jr., by her last marriage. After Mrs. Casler's death her late husband John H. Casler, Sr., was appointed guardian of their son John H. Casler, Jr., who was at the time of the trial about seven or eight years of age, and they are both plaintiffs in this suit. John Steele was appointed administrator of Mrs. Casler's estate, and there not being sufficient of personal assets to pay off said mortgage or deed of trust upon the land, on the twenty-third day of December, 1893, he presented a petition to the probate court of Livingston county for the sale of the whole or part of the real estate of said deceased for the payment of debts, and in compliance therewith, on the fourteenth day of February, 1894, an order was made by the probate court for the sale of the lands of deceased for that purpose.

This order not only included the land in suit which lies west of Grand River, but embraced three and one-half acres more or less on the east side, and all that part of the northwest quarter of section nineteen, township fifty-seven, range twenty-three, south of Grand River, making in all about ninety and one-half acres.

The land was duly appraised at $450, and at the May term, 1894, the land here sued for was sold to the defendant for the sum of $400. Out of this money the administrator paid the mortgage debt, and the plaintiff John Casler, Sr., the sum of fifty dollars. The case was tried by the court without the aid of a jury, who refused all the declarations of law asked by defendant, and found for plaintiff and rendered judgment in his favor for the possession of the land, $225 damages, and fixed the monthly rents and profits at $4.60 per month.

In the statement of the case by counsel for defendant it is admitted that John Steele was regularly appointed the

administrator and no question is raised on this point; it was also admitted that John Casler, Sr., was appointed the regular guardian of John H. Casler, Jr., prior to this proceeding.

Defendant brings the case to this court by appeal for review.

As there were no exceptions saved to the action of the court in overruling the motions for new trial and in arrest, only such errors as seem to appear upon the face of the record proper can be noticed.  Of these, the point is made that the petition fails to state a cause of action, in that while the suit is styled "John H. Casler, and John H. Casler, Guardian and Curator of John H. Casler, an Infant," it is not alleged in the body of the petition that John H. Casler, Sr. is the guardian of John H. Casler, Jr., or that he was ever appointed and qualified as such.  It is plain that this was a material allegation, and but for the fact that the defect is supplied by the answer which alleges, "that the sale of said real estate was advised, solicited and demanded by John Casler, father of the plaintiff in this suit, who was guardian of said John Casler, Jr., and who was the natural guardian of said John H. Casler an infant child," the judgment would have to be reversed upon that ground, but the defect was cured by the allegation in the answer.

The judgment of the circuit court is criticised upon the ground that the parties in whose favor rendered, are not set out in full, and while this should have been done, as it may be corrected on motion, and does not go to the substantial rights of the parties, it should not be reversed upon that ground.

Complaint is made that the judgment is excessive, in that the damage asked for in the petition is one hundred dollars, while judgment was rendered in plaintiffs' favor for two hundred and twenty-five dollars.  But it was a part of the agree-

ment between the parties, that the monthly rents and profits of said premises were $55, or $4.60 per month, that plaintiff had been damaged in the sum of ———— dollars to be fixed by the court, for which they should have judgment if they recovered in the cause, and defendant should not now be heard to complain of an error which he by his own solemn agreement brought about.

"A judgment pronounced by consent of parties or by a stipulation should be accorded the same force as other judgments." [Short v. Taylor, 137 Mo. 517.]

It is insisted, in the absence of an allegation in the petition that the land in controversy is cultivated or pasture land, that plaintiffs were not entitled to anything more in the way of damages than nominal damages, but how any such contention can be made in the face of the agreement of the parties we are unable to conceive. This agreement was binding on the parties, and fully authorized the judgment of the court.

The judgment is affirmed. *Sherwood, P. J.* and *Gantt, J.*, concur.