## WEBER v. LORENZEN et al.

(Circuit Court of Appeals, Eighth Circuit. August 1, 1923.)

No. 6240.

I. Fraudulent conveyances ⨺⇒51(I)—Transfer of exempt property not fraudulent.

Under the law of Iowa, fraud cannot be predicated on a transfer of personal property, which is exempt to the seller under the state statute, and the purchaser may plead and prove the exempt character of the property.

2. Courts ⨺⇒367—State decisions establishing rule of property binding on federal courts.

Construction of a state statute by its highest court, which establishes a rule of property will be recognized and followed by the federal courts in that jurisdiction.

3. Bankruptcy ⨺⇒186(I)—On cancellation grantee held entitled to compensation for raising crop.

On the setting aside of a conveyance of a farm as in fraud of creditors, and vesting of the title to the land and crops thereon in the trustee in bankruptcy of grantor, the grantee *held* entitled to compensation for raising the crops.

⨺⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit in equity by Lorenz Lorenzen, trustee in bankruptcy of Frank W. Weber, against Lola S. Weber. From a part of the decree, defendant appeals. Reversed.

Edwin P. Hudson, of Pocahontas, Iowa (R. L. Hudson and F. M. Hudson, both of Pocahontas, Iowa, on the brief), for appellant.

R. F. Mitchell, of Ft. Dodge, Iowa (W. C. Ralston, of Topeka, Kan., Albert J. Shaw, of Pocahontas, Iowa, and D. M. Kelleher, of Ft. Dodge, Iowa, on the brief), for appellees.

Before SANBORN and LEWIS, Circuit Judges, and McGEE, District Judge.

LEWIS, Circuit Judge. On April 11, 1922, Frank W. Weber was adjudged a voluntary bankrupt. He and his wife were then and for several years theretofore had been residing upon a 160-acre farm in Pocahontas county, Iowa, which was conveyed to him by his mother in April, 1917, charged with an annuity of $200 in her favor, payable annually during her lifetime. When the land was conveyed to him it was incumbered by a mortgage for $7,000. The land was unimproved. He fenced it, put in several carloads of tiling to drain it, and erected upon it the necessary farm buildings. These expenditures brought about an increase of the mortgage debt to $11,000. His business was that of farming the land. He had given chattel mortgages on some of his personal property, had other pressing creditors, could not pay the annuity, was indebted to his mother for borrowed money, and could not pay taxes on the land; and thus, finding himself greatly embarrassed financially, he conveyed the 160 acres back to his mother on December 6, 1921, and on the same day transferred to her by bill of sale certain described personal property, consisting of livestock, grain and machinery on the farm. After the land was reconveyed to his mother she increased the mortgage indebtedness on the 160 acres to $16,000, and applied the proceeds in payment of the $11,000 mortgage, accrued interest, taxes and other indebtedness of the son, leaving in her hands $1,320.05. On May 16, 1922, the trustee in bankruptcy brought this suit against the mother, appellant here, and set up two causes of action, the first, to cancel the deed from the bankrupt to his mother, and the second, to cancel the bill of sale conveying to her the personal property, on the ground that they were both fraudulent conveyances. A decree was entered on each count in favor of the trustee; as to the first, however, 40 acres of the tract on which the dwelling house and other buildings were situated were set aside to the bankrupt as his homestead exemption, and it was directed that the mortgage debt be recovered first out of the remaining 120 acres. The court also found the present worth of the annuity to be $2,720.20, and decreed that that amount also should be charged as a lien in favor of the mother against the land, to be realized out of the 120 acres, deducting therefrom, however, the $1,320.05 in her hands received out of the $16,000 mortgage.

[1] No complaint is made on this appeal as to the action of the court on the first count. The errors assigned relate to the decree

disposing of the personal property described in the bill of sale. After finding that that transaction was in fraud of creditors, the court adjudged the bill of sale to be void, and decreed that title to the personalty described in it be vested in the trustee. In appellant's answer to the second count she set up, among other defenses, that the personal property conveyed to her by the bill of sale was exempt to the bankrupt under the State statute, that at the time of that transaction he was the head of a family and engaged in the business of farming, and thus said personal property, with slight exception, was free from the claims of creditors, and that in consequence she was entitled to retain it under the bill of sale. That claim was successfully resisted by the trustee, and is the issue presented here. His contention is that the exemption is personal to the bankrupt, and that he did not claim it in his bankruptcy schedules (Bankruptcy Act, § 7, cl. 8 [Comp. St. § 9591]), and secondly, that appellant cannot claim it. The bankrupt filed his petition in April, 1922. He had transferred the property described in the bill of sale to his mother on December 6 preceding, and did not at the time his petition was filed "hold" it or own it, and hence he could not make claim to it as exempt. There is no showing that he had any interest in the personal property or made any claim to it after he gave the bill of sale. To maintain the second contention it is necessary to hold, as matter of law, that the mother could not protect her title on the claim which set up in her answer, that the personalty was exempt to the bankrupt and free from the claim of creditors at the time the bankrupt conveyed it to her by the bill of sale. Counsel for the trustee rely principally on In re Estate of Brogan, 177 Iowa, 432, 157 N. W. 952. In our opinion that case lends no support. There the guardian had sold, under an order of the probate court, both exempt and non-exempt personal property of the ward. After distributing the greater part of the proceeds the guardian set up in behalf of the ward as against creditors that the remainder of the proceeds was exempt. The court held that the State statute gave the right to specific property, and that where it and non-exempt property were voluntarily disposed of the right could not be transferred to the mingled remainder of the proceeds, that to do so would be to permit an investment of the proceeds from non-exempt property into exempt property, and thus raise a double exemption, consisting of the newly acquired property as well as other property which the statute specifically exempted. No difficulty is suggested here in selecting out of the property described in the bill of sale that which was exempt to the bankrupt. That court expressly held in Jackson v. Jetter, 160 Iowa, 571, 142 N. W. 431, that unsecured creditors had no right to exempt property, and that as to such property the law took no notice of fraudulent conduct in its disposition, that the holder of such property had a right to transfer it in disregard of his creditors and that his vendee was entitled to the same protection which the exemption laws of the State gave to his vendor if the latter had retained it, and that the exemption could be claimed by his transferee. The same principle is announced in Redfield v. Stocker, 91 Iowa, 383, 59 N. W. 270, the syllabus in that case reading:

"A buyer of property exempt in the seller may plead and prove the exemption, though the seller remain silent."

[2] Creditors and the trustee who represents them have no interest in or right to the bankrupt's exemptions. He could do with them as he pleased. Accepting these two cases as the proper construction to be given to the State statute, as we must do, the effect of them is to establish a rule of property in that jurisdiction which it is the duty of the Federal court to recognize and follow, Keene Five Cent Savings Bank v. Reid, 123 Fed. 221, 59 C. C. A. 225, and the conclusion cannot be avoided that the answer set up a good defense to such personal property as was exempt in the hands of the bankrupt at the time he made the bill of sale. It is not denied, and the proof shows, that the greater part, if not all of the property named in the bill of sale was exempt property, and there was error in decreeing that all of it should be vested in the trustee. The trustee took title to only that part of it which belonged to the bankrupt on December 6 that was not exempt.

It also appears from the uncontradicted evidence that the two cows and two heifers named in the bill of sale belonged to the bankrupt's wife. The trustee had no right to her property.

[3] After the land was reconveyed to appellant she and her son continued to occupy the farm during the crop season of 1922. He planted, cultivated and harvested the crop for that year. He testified that he was working for his mother, and she testified that she hired him the 1st of January. The decree was entered on July 21, 1922, and it is assigned as error that the Bankruptcy Court, in adjudging the rights of appellant and decreeing an accounting from her to the trustee, neglected to allow her anything for raising and caring for the crop on the 120 acres for 1922. We find no evidence in the record on that subject, neither is any claim made in the pleadings, but they were made up before the crop season was well advanced. We think she is entitled to an allowance for services thus rendered, if the trustee has taken over the harvested crop.

Let that part of the decree which deals with the bill of sale be set aside, and let the Bankruptcy Court find what property named in the bill of sale was exempt to the bankrupt under the State statute on December 6, 1921, and as to such property adjudge title thereto in appellant, and as to property named therein not so exempt, except that belonging to bankrupt's wife, adjudge title thereto in appellee, and to further allow appellant, as a preferred claim, such sum, if any, as will be a reasonable compensation to her for her services in furnishing seed, planting, cultivating and harvesting the crop of 1922 grown on the 120 acres, and taken over by the trustee.