THE UNITED STATES OF AMERICA, at the Relation and to the Use of THE FIRST NATIONAL BANK OF CAPE GIRARDEAU, MISSOURI, Appellant, v. HERMAN LUFCY, J. L. ASHLEY and T. E. HUBBARD, and FIRST NATIONAL BANK OF CAPE GIRARDEAU, MISSOURI, a Corporation, v. HERMAN LUFCY.—49 S. W. (2d) 8.

Division One, April 2, 1932.

*Wammack, Welborn & Cooper* and *Hardesty & Limbaugh* for appellants.

*Eugene M. Munger* for respondent.

HYDE, C.—These two actions brought by appellant were consolidated and tried as one case. One was an action on a bond given by respondent Lufcy as trustee in bankruptcy. The other sought to recover an amount in excess of the penalty of the bond from Lufcy.

On April 26, 1924, Lufcy (hereinafter referred to as the trustee) was appointed trustee of the bankrupt estate of D. F. Walser, who was adjudged a bankrupt April 2, 1924. On December 24, 1923, (less than four months before) Walser and wife had executed a deed of trust, upon certain town lots which included their home, to secure an indebtedness of about $8,000. Appellant later became the owner of the note and trust deed. On June 14, 1924, a petition was filed, by the trustee, to sell the land covered by this deed of trust. Appellant was, thereupon, ordered to show cause why the property should not be sold free and clear of the lien of its deed of trust. Evidently, the bankrupt was willing for this to be done, for he made a claim for his homestead exemption out of the proceeds. Appellant filed its written consent, on June 19, 1924, that the property, which included the bankrupt's homestead, should be sold free and clear of encumbrances, the proceeds of such sale to be held subject to claims, under the deed of trust, with the same force and effect as if on the property itself. An order of sale was made, on August 13, 1924, which directed that "the proceeds of and from the sale of said property shall be held by the trustee subject to the lien of said mortgages, or other liens, to the same intents and purposes as though the said property had not been sold; subject to the final order, judgment and decree of this court . . . as to the validity, bona fides, and extent of said mortgages and other liens." The lots were not immediately sold, but on August 21, 1924, the trustee, filed a report of property set apart to the bankrupt as exempt. The property listed was $300 in lieu of the specific personal property set out in the statute, and "Cash in lieu of homestead as claimed $1500." This report was approved on October 9, 1924. The order recited:

"That said report of the trustee setting apart to the bankrupt the property described therein be, and it is hereby in all things approved, and that the property therein described be, and the same is, hereby set apart to the bankrupt, to be retained by him as his own property, under the provisions of the acts of Congress relating to bankruptcy."

On the same day this order was made Walser received a check for $1500, signed by Lufcy, as trustee, and countersigned by the referee. This check was marked "Homestead Exemption," and it was collected by Walser on the next day, October 10th. Thereafter, on October 11, 1924, the referee ordered that the property, including the homestead, covered by appellant's deed of trust, be sold at private sale for $3,000, and directed that this sum be deposited "to

the end that a reasonable opportunity may be afforded for adjusting by compromise or litigation the claims of said lienors who have heretofore filed herein their said written consent for said property to be sold free and clear of liens.'".

Appellant thereafter filed with the referee its proof of secured claim based on its deed of trust. This claim was heard by the referee on the 25th day of June, 1925, upon which the referee took the matter under advisement. On November 18, 1925, the referee made an order allowing the secured claim of appellant as a valid lien against the homestead of the bankrupt in the sum of $1,500, and as a general claim for the balance of $6,666.33. The referee ordered the bankrupt to refund and return the $1,500 wrongfully received by him from said trustee; ordered the trustee to refund and return the sum of $1,500 wrongfully paid out by him to said bankrupt; ordered that the trustee should be reimbursed by any amount paid by the bankrupt; and further ordered that appellant be paid the sum of $1,500 allowed as its secured claim. No proceedings for review of this order were had, and neither the trustee nor the bankrupt complied with this order.

The matter was then brought before the United States District Court upon a petition filed by appellant for a summary order requiring Lufcy to comply with the referee's order of November 18, 1925, to pay the sum of $1,500, and upon the motion of the trustee to vacate the referee's order on the ground that it was beyond the referee's jurisdiction and authority and was void. The District Court refused to vacate the order and made a further order on May 12, 1927, that the trustee "forthwith refund to the said estate the sum of $1,500 which he unlawfully and without warrant of authority paid to said bankrupt on or about October 10, 1924," and further ordered that he "forthwith pay to said bank the sum of $1,500, representing the amount of the secured claim of said bank, . . . with lawful interest thereon from this date." This decision is reported as In re Walser, 20 Fed. (2d) 136. On the failure of the trustee to comply with this order, appellant filed suit against him and the other respondents, who are his bondsmen, for $1,000, the penalty of his bond, and also filed suit against the trustee for the balance. Both suits are in two counts; the first count based on the refusal to comply with the order of the referee of November 18, 1925; and the second count upon the refusal to comply with the order of the District Court of May 12, 1927. The petition alleges that no proceedings for review or appeal were had and that these orders are now binding upon respondents as *res judicata*. Before commencing this suit, appellant had the trustee cited before the District Court for contempt. The District Court, however, held that while the order to pay was a necessary condition precedent to action on the bond, imprisonment, as

punishment for failure to pay, was beyond the power of the court, and left appellant to its remedy against the trustee and his bondsmen. This ruling was affirmed by the Circuit Court of Appeals and its decision is reported as First Natl. Bank of Cape Girardeau v. Lufcy, 34 Fed. (2d) 417.

Respondents' answer set up that the referee's order was not *res judicata* because it was wholly void; that the referee had, by his previous order, set apart to the bankrupt the sum of $1,500; that this order was *res judicata* and a final judgment that this amount should be paid to the bankrupt when funds derived from the sale of the homestead should come into the trustee's hands; that the order of the referee was a total exhaustion of this power; that he could not later rescind it and enter an inconsistent and contradictory order; and that the referee had no jurisdiction to determine the claim of appellant to the fund under its mortgage, this jurisdiction being wholly in Missouri state courts. The answer also set up that the order of the District Court was not *res judicata* because it had no jurisdiction and did not in fact undertake to adjudge any material question; that the part of said order concerning the rights of the trustee was *obiter;* that the court did not have before it for review the question of the validity of the referee's order; that it had no binding force as the funds, out of which plaintiff should be paid as secured claimant, were to be derived from bankrupt's homestead which had been paid out by the trustee, long before it was made, on the orders of the referee; and that only the State courts had jurisdiction to determine the right of appellant to the fund claimed by it. The answer further alleged that the District Court's order meant that the trustee should pay appellant's claim only in the event he had funds of the estate out of which the demand could be paid, and he had no such funds in his hands; that a check signed in blank by the trustee was filled out, countersigned and delivered to the bankrupt by the referee without his knowledge; and that the funds received from the sale of the homestead were paid out on other claims under the referee's orders. Appellant's reply denied these matters and reaffirmed the allegations of the petition that they were all *res judicata.*

Respondents, to sustain allegations of their answer introduced evidence to the effect that it was the custom of the referee to have all trustees of bankruptcy estates sign blank checks and leave them with him to be filled out and delivered as he saw fit; that the trustee, at the referee's suggestion, mailed him a package of checks signed in blank and went about his other business, leaving the referee to close the estate by filling in the payees and amounts and countersigning the checks; and that one of these blank checks was filled in for $1,500 by the referee and delivered to the bankrupt Walser by the

1230

referee. The trustee claimed he knew nothing about it until about ten days later.

In connection with the D. F. Walser bankruptcy there were also bankruptcy cases of two sons of D. F. Walser and an insurance, land and loan corporation which the Walsers owned. The trustee was trustee in all four estates and the bankrupt's attorney was appointed attorney for him as trustee in each. The trustee commingled the funds of all together in one account. He collected a total of about $12,000 from all these estates, but there is nothing to show which estates owned the assets, from which the money was obtained, except that received from the sale of the D. F. Walser residence. Walser's sons were each allowed $1,500 for homestead exemption, but these checks were turned over to and collected by him. He said that all the boys had come through him. All of these payments, as well as attorneys' fees and costs of administration, were paid out of the funds on hand before proceeds of the sale of the D. F. Walser homestead were received and deposited by the trustee in the commingled bank account. The items paid out of the account, after the $3,000 was deposited therein, were three secured claims of $522.76, $874.37 and $2,178.33, respectively. The payment of these claims left a balance of $765.69. Whether it has ever been disbursed was not shown. Neither was it shown against which one of the four estates the three secured claims, above referred to, were allowed, except that the $874.37 claim was against the estate of one of the sons. All of this evidence was admitted over the objection of appellants.

At the close of all the evidence, appellants offered an instruction which directed the jury to find a verdict for the appellants, on the second count of their petition. This instruction was refused by the court. The court submitted the case to the jury upon the theory that if the trustee had paid out all of the $3,000, on other orders of the referee, before he was ordered to pay appellants the $1,500, then appellants could not recover on the bond. The jury's verdict was for respondents and, from judgment entered thereon, this appeal was taken.

It is apparent that if the Federal Court's order to the trustee, to refund $1,500 to the estate and then pay it to appellants (this order is susceptible of no other construction) was valid, then respondents have no defense to this action. Judgments of Federal Courts as binding on state courts. [See 15 R. C. L. 989, sec. 463.] If it was, the condition of the bond that the trustee "shall obey such orders as said court may make in relation to said trust, and shall faithfully and truly account for all money, assets and effects of the estate of said bankrupt which shall come into his hands and possession, and shall in all respects faithfully perform all his official duties as said

trustee'' was breeched. The following questions, raised here, are decisive of this case.

First: Did the Bankruptcy Court have jurisdiction, after selling the homestead property, to determine the conflicting claims to the proceeds?

Second: Did the order of the Bankruptcy Court approving the trustee's report as to exempt property end its jurisdiction to determine these claims?

Third: Was the decision of the United States District Court a valid final determination of these questions, and the other matters now urged in defense, rendering them *res judicata?*

Before considering these questions, however, we must first consider the question of our own jurisdiction. The amount involved in this case is less than the amount required to give this court jurisdiction. We have jurisdiction here because the validity of authority exercised under the United States is drawn in question. [Sec. 12, Art. VI, Constitution of Missouri.] This court has held, that this clause of our Constitution, being so nearly in the language of the Federal Statute (U. S. C. A. Title 28, sec. 344) defining the jurisdiction of the Supreme Court of the United States over cases decided by state courts, "It was clearly the object and purpose of the framers of the Constitution to confer jurisdiction on this court by appeal in those cases wherein the validity of an authority exercised under the United States is involved within the said acts of Congress.'' [Beekman Lbr. Co. v. Acme Harvester Co., 215 Mo. 221, 114 S. W. 1087; Affirmed Acme Harvester Co. v. Beekman Lbr. Co., 222 U. S. 300; 32 Sup. Ct. 96; 56 L. Ed. 208.]

In Dupasseur v. Rochereay, 21 Wall. 130, 22 L. Ed. 588, the Supreme Court of the United States said:

"Where a State court refuses to give effect to the judgment of a court of the United States rendered upon the point in dispute, and with jurisdiction of the case and the parties, a question is undoubtedly raised which . . . 'may be brought to this court for revision. The case would be one in which a title or right is claimed under an authority exercised under the United States.'' [To the same effect are Crescent City Live Stock Landing & Slaughter House Co. v. Butchers Union Slaughter House & Live Stock Co., 120 U. S. 141, 7 S. Ct. 472, 30 L. Ed. 614; Central Nat'l. Bank v. Stevens, 171 U. S. 108, 18 S. Ct. 837, 43 L. Ed. 807; Pittsburg, C. C. & St. L. R. Co. v. Long Island Loan & Trust Co., 172 U. S. 493, 19 S. Ct. 238, 43 L. Ed. 528; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Cumberland Glass Mfg. Co. v. DeWitt, 237 U. S. 447, 25 S. Ct. 636, 59 L. Ed. 1042.]

It has been further held that this rule applies to decisions of courts of bankruptcy. [O'Brien v. Weld, 92 U. S. 81, 23 L. Ed.

675; Palmer v. Hussey, 119 U. S. 96, 7 S. Ct. 158, 30 L. Ed. 362; Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676; Lesser v. Gray, 236 U. S. 70, 35 S. Ct. 227, 59 L. Ed. 471; Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 68 L. Ed. 165; 8 Remington on Bankruptcy, 249-252, secs. 3883-3888; 1 Collier on Bankruptcy, 815, sec. 24.] It seems clear that a Federal question, reviewable by the Supreme Court of the United States, is presented here. This case involves a construction of the bankruptcy act and the validity of the judgment of a United States District Court acting as a court of bankruptcy. The rights claimed under this judgment are directly drawn into question.

Did the Bankruptcy Court have jurisdiction, after selling the property including the bankrupt's homestead, to determine the claim of appellants, to the proceeds, under its mortgage?

By the National Bankruptcy Act, United States District Courts are created courts of bankruptcy (U. S. C. A. Title 11, sec. 11) with power to appoint certain officers to carry out its purposes. The trustee was an officer of that court (U. S. C. A. Title 11, sec. 1; 2 Remington on Bankruptcy, 468, sec. 1113) just as was the referee. The title to the assets of the bankruptcy estate was in him (U. S. C. A. Title 11, sec. 75). The duty of collecting, safely keeping, and properly disbursing the funds of the estate was enjoined upon him. [U. S. C. A. Title 11, sec. 75; see, also, General Orders in Bankruptcy, under sec. 53.] He asked, by his petition to the referee, authority to sell the lots which included the homestead property of the bankrupt. (The referee becomes to all intents and purposes the Court of Bankruptcy as soon as the case is referred to him. [2 Remington on Bankruptcy 40, sec. 619.] By the authority thus obtained he acquired the fund. The bankrupt consented to this procedure, which brought the fund into court, by moving out of the property and making claim for his homestead exemptions from the proceeds of the sale. Appellant consented by written waiver and transferred its rights from the land to the fund.

"It is a general principle governing jurisdiction of all courts that where a court has in its possession a fund in respect to which there is a dispute such court may determine the rights of parties asserted in such fund. The voluntary surrender of the property in controversy to the court or its officers is equivalent to a consent and the bankruptcy court may then have jurisdiction of claims in respect to such property." [1 Collier on Bankruptcy, 760, sec. 23; see, also, 3 Remington on Bankruptcy, 150, sec. 1281; In re Antigo Screen Door Co., 123 Fed. 249; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; In re Lucius, Cawthorn-Coleman Co., 124 Fed. 455; same case, Lucius v. Cawthorn-Coleman Co., 196 U. S. 149, 25 S. Ct. 214, 49 L. Ed. 425; In re Renda, 149 Fed. 614; In

re National Grocer Co., 181 Fed. 34, 104 C. C. A. 47, 30 L. R. A. · (N. S.) 982; In re Drag, 254 Fed. 474.]

Unquestionably, the bankruptcy court had jurisdiction of the fund, the bankrupt, the appellant, and the trustee, and had the authority to determine the claims of all of them in the fund.

Did the jurisdiction of the court, to determine these claims, end when it made the order of October 9, 1924, approving the trustee's report, setting apart to the bankrupt the sum of $1,500 cash in lieu of homestead?

It is true that title to exempt property remains in the bankrupt. [U. S. C. A., Title 11, sec. 110.] Usually the only question to be determined is whether a bankrupt is entitled, as against the general creditors, to the property he claims as exempt. Therefore, when that question has been disposed of by setting the property apart to the bankrupt the jurisdiction of the Federal Court ceases and it will leave controversies between the bankrupt and those who claim the property, under contracts or liens made by him, to the State courts, withholding, if necessary, the discharge of the bankrupt until these are decided. [Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061; for other cases see U. S. C. A., Title 11, sec. 24, note 142, p. 345.]

The situation, however, is very different, in the ordinary case where the bankrupt claims specific property as exempt, from that existing here. In the Lockwood case, for instance, the bankrupt had nothing but exempt property. Here, the bankrupt had voluntarily surrendered, to the trustee to sell, property which included his homestead, but was worth much more, and elected to claim from the fund derived from its sale. The trustee had asked and obtained an order to sell the whole property and appellant had consented to the sale, expressly reserving its lien on the proceeds. The order, authorizing the trustee to sell, had directed the proceeds of the sale to be held by the trustee, subject to the lien of appellant's mortgage and subject to final judgment as to the validity of its mortgage. Appellant was claiming all that would be realized, the bankrupt was claiming $1,500, and the trustee was claiming, at least, all the property brought over $1,500. At the time the order approving the trustee's report of exemptions was made, the property had not been sold and there was no fund, derived from it, from which to set apart the $1,500 claimed. The order approving the sale, by which $3,000 was realized from the whole property, including the homestead, directed that the money should be deposited to afford reasonable opportunity to determine the claims against it. Respondents seem to think that it is in their favor that the trustee paid the $1,500 to the bankrupt, out of the general funds of the estate, before the property including the homestead was sold. We do not think it, in any way, helps the trus-

tee's position to have paid the bankrupt $1,500 out of funds belonging to the estate, out of which it was not payable, and then to have used the funds, derived from the homestead of D. F. Walser, to pay secured claims against this and other bankrupt estates. If more claims were allowed, against any of these estates, than he had funds on hand, in such estates to pay, the trustee could have pro-rated them. However, all that was for the Federal Court if it had jurisdiction.

The view of the Federal Court about the order approving the trustee's exemptions was as follows:

"Before considering the status of the case as to the legal power of this court to order the trustee to comply with the referee's order of November 18, 1925, it may be well to consider whether the latter order is or is not in diametrical conflict with the order made by the referee on October 9, 1924. The latter order set apart to the bankrupt the sum of $1,500 cash, in lieu of homestead; but it did not order the trustee presently, or at any other time to pay this sum (so found as the value of the homestead) to the bankrupt. It was necessary, in order to warrant the trustee in taking credit for the value of the homestead claimed, for the referee to enter an order finding the existence of such facts as warranted in law the making of the order of exemption. In short, an order about the matter had to be made by the referee before there could exist any right in the trustee to take credit for the value of the homestead, or for the petitioner to claim it as validly subject to the deed of trust. Whether the order made was or was not unnecessarily broad I need not discuss. Broad as it may have been, it yet contained no order on the trustee to make present payment of the sum found as the value of, and set apart as, the homestead. The homestead, I repeat, had to be set apart to the bankrupt before a legal basis would exist on which to bottom the lien claim of petitioner, as also before the trustee could either take credit for the value of it, or justify the trustee in transferring it to the petitioner, or justify the referee in ordering it to be transferred to petitioner under the latter's lien. That petitioner had a subsisting, valid lien on so much of the lots as constituted the homestead, does not seem to be controverted. At any rate, such seems to be the law of Missouri. [Bank v. Mell, 185 Mo. App. 510; see, also, Cowan v. Burchfield, 180 Fed. 614; Mills v. Fisher & Co., 159 Fed. 897.]" [In re Walser, 20 Fed. (2d) l. c. 138.]

Two recent decisions by the United States Circuit Court of Appeals of the Eighth Circuit, seem to indicate that the above conclusions of the District Court were correct. In Weber v. Lorenzen, 292 Fed. 41, a bankrupt had, by a bill of sale, conveyed to a creditor both exempt and non-exempt personal property. In a suit by the trustee, the bill of sale was declared void upon the contention that the exemption was personal to the bankrupt, and that since he did

not claim it, the creditor could not claim it. The Court of Appeals, however, held that the trustee could not recover the exempt property and ordered the bankruptcy court to find what property named in the bill of sale was exempt to the bankrupt (set it apart?), and as to such property adjudge title thereto in the creditor. In Gylling v. Kjergaard, 293 Fed. 676, a bankrupt executed a mortgage, which included both exempt and non-exempt property, within less than four months prior to his adjudication. By agreement the property was ordered sold by the referee and the claims of the bankrupt, the trustee and the mortgagee transferred to the proceeds. The District Court held the mortgage valid as to exempt property and ordered that part, of the proceeds, paid to the mortgagee. Upon the bankrupt's appeal, it was contended that the judgment should be reversed because the proceeds of the sale represented both exempt and non-exempt property from which the bankrupt was entitled to select certain specific property as exempt; that no selection had been made prior to the sale; and that this right of selection was a personal right of the bankrupt which the mortgagee could not enforce against him. The Court of Appeals, however, held that by reason of the stipulation and order for sale of the property and segregation of the proceeds, it would be presumed that the selection had been made and the property set apart and allowed as exempt to the bankrupt. The order, directing that the funds representing the exemptions be paid to the mortgagee, was affirmed.

While all the statements made in decisions of the Federal Courts cannot be reconciled, the view of the District Court in In re Walser, supra, would seem to us to be the better rule, under the circumstances of this case at least. Considering the prior orders that had been made for sale of both exempt and non-exempt property and for the trustee to hold the funds derived from the sale until the conflicting claims thereto had been determined, we do not think that the order setting apart $1,500 for homestead exemption before it had been obtained by the trustee and without any order to pay the same to the bankrupt, would have the effect of removing the fund from the jurisdiction of the Federal Court. It would certainly seem reasonable to make a distinction between the effect of setting apart, as exempt, money in the custody of the court and land or specific personal property, in the bankrupt's possession, concerning which there are conflicting claims. The land would remain where it is; specific personal property could not be easily concealed; and claimants would have an opportunity for prompt remedy in a state court, but money paid the bankrupt would be gone.

This idea is expressed in In re Renda, 149 Fed. 614, as follows:

"The bankrupt assented to the sale by the receiver by which the fund was produced, and, the money being in the latter's hands, the

court has now to say how it is to be disposed of, necessarily passing upon conflicting claims. In re Rodgers, 125 Fed. 169, 11 Am. Bankr. Rep. 79. If the opposite course were pursued in the present instance, it would work manifest injustice. The bankrupt could put the money into his pocket, and those in whose favor he has waived his right to it would be without redress.''

Likewise, 3 Remington on Bankruptcy, 150, section 1281, states: ''The rule denying jurisdiction over exempt property would not, however, permit the court to give property, once in its custody but belonging to another, over to an irresponsible bankrupt simply because the latter claims it as exempt. And if the bankrupt claims, as exempt, property in the hands of the trustee to which a third part also lays claims of ownership or of right of possession, the bankruptcy court must determine between the two applicants and deliver the property to the person entitled thereto.'' [See, also, Federal cases there cited.]

This brings us to the final question. Was the decision of the United States District Court a valid, final determination of all the questions, raised by way of defense herein, rendering them *res judicata*?

The answer of the other two questions in the affirmative answers this one. If the Bankruptcy Court had jurisdiction over the fund and the right to determine the claims thereto and did not lose jurisdiction by reason of the order approving the trustee's report of exemptions, it follows that it had jurisdiction to direct the trustee what to do with the fund, when it decided who was entitled to it. But the parties did not stop there. Both appellant and the trustee asked the District Court to pass upon the questions urged here; appellant, by a petition for a summary order to the trustee to comply with the referee's order of refund; the trustee, by a petition to vacate that order. The District Court decided these questions. The trustee did not appeal from its decision and cannot now be permitted to try them all over again. It is a familiar principle of the doctrine of *res judicata* that even though a judgment may be erroneous (not void), so that it might have been reversed on appeal, it is nevertheless effective as a bar to further suits. [34 C. J. 768, sec. 1184; 15 R. C. L. 957, sec. 433.] It is, also, well settled that a former judgment is a bar, not only as to all matters which were raised, but also as to all defenses which could have been raised. [34 C. J. 856, sec. 1267; 15 R. C. L. 962, sec. 438.] It follows, therefore, that the trial court should have instructed the jury to find for appellant on the second count of each of its petitions.

The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.