Jim OWEN, Plaintiff-Appellant,

v.

CITY OF BRANSON, Defendant-Respondent.

No. 7592.

Springfield Court of Appeals.

Missouri.

Oct. 1, 1957.

A. H. Blunk, Forsyth, Rogers & Rogers, Gainesville, for plaintiff-appellant.

Clay Cantwell, Branson, Robert L. Gideon, Forsyth, for defendant-respondent.

RUARK, Judge.

Plaintiff-appellant, Owen, brought this suit to enjoin the enforcement of ordinance number 265 of the City of Branson, which ordinance provides for an annual "license or wharfage tax" of $1 per front foot on all wharves or docks engaged in the loading, unloading, or repairing of boats or other types of water craft, which such wharves or docks are connected with and abutting upon city property. From an adverse judgment plaintiff has appealed.

The petition attacks the validity of the ordinance because (a) the operation of a boat dock is not one of the things authorized to be licensed and taxed (see Section 94.270, RSMo 1949, V.A.M.S., as limited by Section 71.610); (b) the business is not within the city limits; (c) the ordinance is uncertain and indefinite, confiscatory, not uniform, and provides for the licensing of owner as well as operator. The petition then specifically pleads that theretofore a suit was filed by plaintiff (now defendant-respondent) against Owen and a decree was rendered in said suit giving Owen the right of ingress and egress across the property of the city to the boat docks which the city now (by the ordinance in question) seeks to charge with a license fee.

The answer of the city charges that Owen (and other parties not now in the case) has for a long time operated a wharf or boat dock on the lake front and on land

dedicated as a public street and belonging to the city, without right or authority. That Owen ought to be estopped from maintaining this action because he comes into court with unclean hands by reason of the fact that he, while acting as mayor of the city, fraudulently procured the passage of and signed two ordinances giving to himself a perpetual lease on 200 feet of Lake Avenue, a city street. The answer then pleads that Owen and the city were parties to a previous suit involving the wharf or boat dock. That in such suit it was decreed that the city had power and authority to levy and collect a wharfage license or tax. That judgment in such case was entered by stipulation of the parties. That plaintiff, Owen, has wrongfully breached the agreement reached in such stipulation (and reduced to judgment), that he cannot take advantage of his own wrong, and that he is now estopped from maintaining this action or assaulting and attacking the ordinance by virtue of his conduct and by reason of the stipulation and judgment so referred to.

Lake Taneycomo, which slouches in wandering course through the valleys and below the bluffs of what is called the Shephard of the Hills country, is formed by a dam across White River, a navigable stream. Branson, a city of the fourth class, sits on the west bank of Lake Taneycomo and has control of a dedicated strip of ground called Lake Avenue, which property extends for approximately 700 feet along the water edge of the lake. The control of the water surface of the lake is in the War Department. It is conceded that permits for the anchoring of docks and wharves are issued by the War Department only upon and after consent of the adjoining riparian owners.

The center of the strip known as Lake Avenue is paved and used for street purposes. One section of the shore line is somewhat irregular, and the space between the street pavement and the water's edge varies with the meander of the shore line and the height of the water. A portion of the shore line on Lake Avenue, however, is riprapped with stone and concrete so as to make a sort of landing which slopes off the street, out and down to and under the surface of the water. Upon the waters of the lake and along and off this shore line are several establishments, locally called boat docks, where the needs and pleasures of hopeful fishermen are served in the form of rental boats, bait, fishing tackle, and other things dear to the heart of piscatorial practitioners. Also stalls are rented for the housing of private boats. One of these establishments is owned by the plaintiff, Owen, and is known as Fisherman's Dock.

Fisherman's Dock is 120 feet long, riding a few feet off the shore line at the approximate place where plaintiff was originally given a perpetual easement by ordinances subsequently declared void (of this more later). Approximately half of this length is alongside the stone riprap or landing. The structure is in reality a long building, a floored and roofed raft, resting on floating oil barrels. It is moored in place by cables fore and aft, which cables run out from the floating dock upon and over a portion of Lake Avenue and are attached to trees. At least one of these cables lies across the pavement, where it can be crossed by cars, but is subject to being raised as the height of the water increases and pulls the cable taut and up. Thus the dock sits alongside the bank and landing, neither a part of the land nor free from it, but, like a tethered turtle, rising and falling with the flux and ebb of the waters of Lake Taneycomo, and rocking gently in rhythm with waves made by passing motorboats. Other than the mooring cables, the sole physical connection with the land is a walkway or gangplank, one end of which is attached to the deck of the dock and the other of which rests upon (but is not attached to) the sloping stone pavement. This gangplank thrusts out on terra firma approximately six to eight feet, depending, of course, upon the varying water level of the lake and whether the dock is riding close to shore or out from it. Such gangplank is the umbilical cord

which carries all of the business from the shore onto the dock, and the actual business with the customer, at least theoretically, is done on the floor of the dock and beyond the city limits, which stop at the water's edge. There is, however, evidence that at least upon occasions boats are stacked out on the lake shore; and beyond the rip-rapped portion of the bank, near the opposite end of the structure, the bank curves outward, thus leaving considerable space on Lake Avenue between the pavement and the bank. This space the owner of the dock inferentially appropriated by the maintenance of a sign in rather large letters, "Fisherman's Dock," and above it the words, "Free Parking."

In the year 1936 the City of Branson granted to plaintiff, Owen, the right to build a wharf at a designated point on Lake Avenue, and a "perpetual easement" on 150 feet of lake front "for wharf use and construction." In the year 1941 the city granted to Owen an additional 50 feet for such purpose. The grant was in this instance described as "an irrevocable perpetual easement * * * for wharfage use and construction." Owen was mayor of the city at the time of the passage of these ordinances and signed them as such. With such ordinances in existence, he was able to procure permits from the War Department for maintenance of the dock or wharf, which he did construct and thereafter maintain.

Sometime thereafter the city brought suit against Owen, and this is the suit referred to in the pleadings of both parties. Eventually, sometime prior to June 27, 1955, the parties got together and entered into a stipulation for a judgment whereby all rights of the parties in reference to the situation were settled and declared. In this stipulation the parties announced that a full and complete settlement had been effected. Such stipulation, which went into judgment, declared that the City of Branson is the owner and in control of Lake Avenue and that Lake Avenue extends to the water's edge or shore line of Lake Taneycomo. That the city has the use of said Lake Avenue for street purposes, and defendants (including Owen) have no title or interest in Lake Avenue other than that employed by the general public. That the defendants (including Owen) have "boat docks, fishing facilities, and wharves" anchored and attached to the shore line on Lake Avenue, and that the defendants have the right of ingress and egress to said "docks, wharves, and fishing facilities" for themselves, their agents, servants, employees, and the general public. It was adjudged that defendants (including Owen) were enjoined from interfering with the use of Lake Avenue by the city for public purposes. That defendant Owen had, by permission of the War Department, the right to have a boat dock and fishing facilities at said place, and the City of Branson was enjoined from interfering with the right of ingress and egress of the owner of said dock, with agents, servants, employees, and the general public, to and from the facilities so operated. It was then adjudged that the ordinances which theretofore had granted a perpetual lease on the lands were declared to be void and illegal. The judgment in words and figures then provided as follows:

"(T)he Court further finds and declares by this judgment and decree that the plaintiff, The City of Branson, under the laws of this State and particularly under the Laws governing Cities of the fourth class, is empowered with the authority, by ordinance, to regulate, license and tax docks and wharves, along said shore line of Lake Taneycomo, abutting said Lake Avenue, and that the plaintiff is authorized and empowered under the Laws of this State, by a general uniform ordinance, duly passed by the Board of Aldermen, *to charge the defendants herein, or any other person who may operate a dock or wharf on Lake Taneycomo abutting said Lake Avenue, a yearly license of wharfage tax for the operation of their docks or wharfs.*

"That the plaintiff shall not discriminate against the defendants herein, or

any other person or persons, partnership or corporation seeking a license to operate a dock or wharf connected to the shore line abutting Lake Avenue, and that the license fee and wharfage tax, if any, so charged shall be reasonable and not prohibitive or confiscatory."

The judgment aforesaid was rendered on July 27, 1955. At such time there was no ordinance providing for the charging or levying of a tax or fee upon boat docks or wharves tied up on the city lake front, but on July 11, approximately two weeks thereafter, the city passed the ordinance now in question. On August 25, 1955, this suit was brought to attack it.

In the case before us the trial court, at the request of plaintiff, rendered his findings of fact and conclusions of law. His findings, which included most of the facts hereinbefore stated, were that the plaintiff did not come into court with clean hands because the position of his dock could not be maintained without a permit from the War Department, and that permit existed by virtue of ordinances admittedly illegal and void; and that the plaintiff is estopped by virtue of the stipulation, which became the judgment of the court, to question the authority of the city to pass the ordinance.

The court further found that the evidence was insufficient to establish that the ordinance in question here is confiscatory and not uniform in its operation; and judgment was rendered dismissing plaintiff's bill.

Appellant contends here that the ordinance is inapplicable because the plaintiff's business is outside the city limits and that the ordinance is invalid because (a) the boat dock is not a wharf within the meaning of the statute authorizing the city to lease, license, or regulate wharves and (b) it is not a business permitted to be taxed under the occupation tax ordinances.

Although the trial court assigned estoppel as one of the reasons for his denial of relief, and although appellant himself poses the question here, "Does the judgment rendered in the first case estop the parties?", he has not seen fit to cite any authority to sustain his contention that it does not.

■ It is our conclusion that the plaintiff is in no position to attack the validity of the ordinance in respect to its application to the location of, or the character of business carried on by, his and similar operations. The plaintiff, having secured the permit to maintain his dock alongside the public shore or landing by what amounted to a fraud in law, and being subject to the destruction or loss of that privilege by the decree in the suit then pending, secured the benefit of recognition of a privilege to maintain the dock at that place, as well as an injunction which in effect prevented the city from making use of its own waterfront property in any manner which would obstruct or interfere with the plaintiff in ingress to and from this privileged operation. He secured this by joining in a stipulation which induced the court to enter such a judgment. There is no contention that the judgment was void. As a matter of fact, the plaintiff pleaded and claimed the benefit of that judgment in this suit.

The parties in the previous case were undertaking to determine and have declared by judgment their respective rights in respect to the operation of the boat dock. The determination of whether the operation of the dock at the *location* was the operation of a business partly within the city, and whether the *character of the operation* placed it in the category of one or more of the occupations specifically named in Section 94.270, or whether it was one which fell within the provisions of Section 237.210 (the wharf-landing lease statute), necessarily required the determination of questions of fact and of the law as applied to those facts. This determination became the decree of the court. It is presumed that the conclusion arrived at was correct. Hendershot v. Minich, Mo., 297 S.W.2d 403, 410, and cases cited. Plaintiff is now estopped on those questions by that judgment.

██ Judgments (including judgments by agreement) are conclusive of the matters adjudicated and are not subject to collateral attack except upon jurisdictional grounds. Freeman on Judgments, 5th Ed., vol. 3, § 1350, p. 2773; Drainage District No. 1 Reformed, of Stoddard County v. Matthews, 361 Mo. 286, 234 S.W.2d 567; see La Presto v. La Presto, Mo., 285 S.W.2d 568, 570, and cases cited; Hocken v. Allstate Ins. Co., 235 Mo.App. 991, 147 S.W.2d 182, 186; Hess Warming & Ventilating Co. v. Burlington Grain Elevator Co., 280 Mo. 163, 217 S.W. 493. And such a judgment, *even though erroneous,* is a bar to relitigation (in a later suit) of the issues so determined under the doctrine of collateral estoppel and res judicata. 50 C.J.S. Judgments § 630, p. 55; Brasker v. Cirese, Mo., 269 S.W.2d 62, 66; State ex rel. Metropolitan Life Ins. Co. v. Hughes, 347 Mo. 549, 148 S.W.2d 576; Mississippi and Fox River Drainage Dist. of Clark County v. Ruddick, 228 Mo. App. 1143, 64 S.W.2d 306, 308; United States ex rel. First National Bank of Cape Girardeau v. Lufcy, 329 Mo. 1224, 49 S.W.2d 8, 14; State ex rel. Brown v. Broaddus, 216 Mo. 336, 115 S.W. 1018, 1020.

██ There is a further reason why plaintiff may not now claim the invalidity of the ordinance as applied to boat docks situated and operated such as his, and to that reason we assign the broad and inclusive term of estoppel by conduct, which is in itself a diamond having many facets. It has broader application than estoppel by judgment, and the agreement and conduct of the parties in a case, even though reduced to judgment, may estop them in a manner and with an effect different from the estoppel put upon them by the judgment. See Annotation, Note 10, United States v. International Building Company, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182, 1190; 49 C.J.S. Judgments § 452, pp. 883–884. One facet of such estoppel is that of acceptance of benefits. In St. Louis Public Service Company v. City of St. Louis, Mo., 302 S.W.2d 875, loc. cit. 879, the Supreme Court said:

"The rule is well settled that one voluntarily proceeding under a statute or ordinance, and claiming benefits thereby conferred, will not be heard to question its validity in order to avoid its burdens. The same or similar rules have been applied in litigation involving many different types of instruments, licenses, or other transactions. The designation used in referring to this rule or doctrine is obviously unimportant. It is frequently called an estoppel. However, it is akin to the rule against assuming inconsistent positions and it involves the principles of waiver, election, and ratification rather, perhaps, than being limited to the precise principles of equitable estoppel. Regardless of the name or principle designated, the result is clearly the same. It precludes one who accepts the benefits from questioning the validity of the accompanying obligation. For convenience, we will hereinafter refer to this rule or doctrine as an estoppel."

Plaintiff, having received the benefit of his stipulation and the judgment rendered in accordance therewith, may not now dispute the validity of such judgment. Clark v. Mississippi Valley Trust Company, 357 Mo. 785, 211 S.W.2d 10(8); Wilson v. Union Electric Light & Power Co., 10 Cir., 59 F.2d 580(6); Sage v. Finney, 156 Mo.App. 30, 135 S.W. 996, 1000; see, also, Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631, 637–638; Ward v. Kurn, 234 Mo.App. 241, 132 S.W.2d 245; 31 C.J.S. Estoppel § 115, p. 369; Clark v. Clark, 322 Mo. 1219, 18 S.W.2d 77.

██ Sibling to acceptance of benefits is the facet of estoppel created by plaintiff's conduct in the previous case; that is, by stipulating and thus inducing the court to take the judicial action which it did, plaintiff cannot now question or complain of that which he induced the court to do. In Harbin v. Schooley Stationery & Printing Co., 362 Mo. 1118, 247 S.W.2d 77, at loc. cit. 81, it is said:

"Having intervened and become a party and having participated in the receivership proceeding without in any way challenging the validity of the receivership order and having utilized the proceeding in the furtherance of his own stated claim for relief, plaintiff was a party to and participated with defendants in the furtherance of the litigation, pending which he now asserts his security became depreciated. We may assume without deciding that, as plaintiff contends, the receivership was wrongful because void from its commencement. And it may be conceded plaintiff by his conduct could not validate the void proceeding. * * * But plaintiff should not now say the receivership was wrongful. We are of the opinion his conduct should estop the assertion of his claim for recovery in this action against defendants based on the theory the receivership was *void* and wrongful."

See, also, Michels v. Olmstead, 157 U.S. 198, 15 S.Ct. 580, 39 L.Ed. 671; Welch v. Dameron, 47 Mo.App. 221, 226; Casler v. Chase, 160 Mo. 418, 60 S.W. 1040, 1041; In re McManus' Estate, Mo.App., 199 S.W. 422.

"Public policy itself will not permit them to assert in one court that the most solemn decrees of another court were obtained for a different purpose from that which the record discloses. * * * and the courts will not permit the *defendants to stultify themselves*, and allow them to say that the judgment in that case was not obtained in good faith and that it does not mean what it says, but something else."

Warfield v. Hume, 91 Mo.App. 541, loc. cit. 549.

We do not hold that the ordinance was valid. We hold that plaintiff is estopped to welch on the agreement which he had reduced to judgment and question the validity upon the grounds asserted here. The estoppels against the plaintiff do not *create* a right to tax his and other businesses similarly situated, but preserve the rights which were settled and determined under the stipulation and judgment in the previous suit. See Emery v. Brown Shoe Co., Mo., 287 S.W.2d 761, 768, and cases cited.[1]

The holding that plaintiff cannot question the validity or applicability of the tax in respect to businesses located in the place where plaintiff's dock is located, and in respect to the character of the business carried on, would not exclude plaintiff from questioning the validity of the ordinance in respect to whether it was confiscatory or not uniform. The trial court determined that the evidence did not establish that it was not uniform or that it was confiscatory. The holding in that respect is not challenged here by assignment of error, nor is is presented in argument. Hence those questions are not before us.

For the reasons foregoing, the judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.

---

1. We have not overlooked the reluctance of the courts to hold as res judicata judgments by agreement or otherwise concerning applicability or validity of taxes in respect to taxes subsequently levied (see Young Men's Christian Ass'n of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497; United States v. International Building Company, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182), such subsequent taxes constituting a different subject matter. But in this case the circumstances of the first judgment and the rapidity of events which followed impel us to the conclusion the same subject matter was involved.