The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71611-3867
Dear Senator Bradford:
I am writing in response to your request for my opinion on the following question:
 For purposes of collecting a local hamburger tax provided for by the Advertising and Promotion Commission Act, specifically A.C.A. § 26-75-602, as well as municipal occupation/business license fees, would a facility which is floating in the Arkansas River yet anchored to the shore within the stretch of the city limits be considered to be in the city limits and subject to these taxes?
You have indicated in your request (1) that all parking for the facility is on land inside the city limits; (2) that the gangplank allowing access to the facility is anchored on the bank within the city limits; (3) that the restrooms for the facility are on land within the city limits; (4) that the facility is serviced by city sewer connections; and (5) that police and fire services are supplied by the city.
RESPONSE
The answer to your question will turn on a factual inquiry that I am neither equipped nor authorized to undertake. Moreover, your request contains an ambiguity that makes it impossible to opine on how the law would apply to assumed facts.
Section 26-75-602 of the Arkansas Code, which you reference in your request, provides for the imposition by the city of a specified gross receipts tax on restaurants. Although the statute at no point specifically states that the restaurants must be located within city limits, in my opinion this condition is implicit. Moreover, the legislature has expressly acknowledged in three emergency clauses amending the Advertising and Promotion Commission Act, which contains the statute at issue, that the tax applies only to businesses "within the city" or "in such cities." Acts 1977, No. 178, § 8; Acts 1981, No. 20, § 4; Acts 1989, No. 626, § 7.
Municipal corporations derive their legislative powers from the general laws of the state. Ark. Const. art. 12, § 4. A municipality has no powers except those expressly conferred by the legislature, and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. City of Lowell v. M NMobile Home Park, Inc., 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996). Accordingly, in my opinion the gross receipts tax can apply only to restaurants located within the city limits.
I am unable to determine from your request whether the restaurant lies within city limits. You indicate that the restaurant is "anchored to the shore within the stretch of the city limits." However, I can read this passage in three ways: (1) the restaurant is within city limits; (2) the shore is within city limits; or (3) the restaurant is outside city limits but the devices affixing it to the shore "stretch" into city limits. In addressing these possibilities, I will consider the second and third together, since they are either both true or both false.
Assuming the restaurant is within city limits, I believe it is clearly subject to the gross receipts tax.[1] The mere fact that it is floating and could conceivably relocate is immaterial to its tax liability while doing business inside city limits.
Conversely, I suspect but cannot formally opine that if the restaurant is floating outside the city limits, it should be considered exempt from taxation. The Supreme Court has ruled that a city may tax a business located outside city limits so long as it conducts business within city limits. See, e.g., Texarkana v. James Mayo Realty Co., 187 Ark. 764,62 S.W.2d 42 (1933) (occupation tax applied to realtor who bought and sold realty within city); Blytheville v. Webb, 172 Ark. 874, 290 S.W. 589
(1927) (license tax applied to wholesale dealer who delivered and sold oil and gas within city). However, determining whether the restaurant might be deemed to be doing business in the city is clearly a matter of weighing the facts, including those you have itemized in your request. As previously noted, I am neither able nor authorized to undertake this task.
Finally, I have located no authority that suggests that a facility floating outside city limits but firmly and possibly permanently moored to property within city limits will be deemed located within city limits. The only case I have found in any jurisdiction addressing this issue is Owen v. City of Branson, 305 S.W.2d 492 (Mo.App. 1957), in which a commercial dock owner challenged the city's power to tax his business. In Owen, the city limits stopped at the water's edge. Id. at 495. The court colorfully described the attachment of dock to city as follows:
 Thus the dock sits along-side the bank and landing, neither a part of the land nor free from it, but, like a tethered turtle, rising and falling with the flux and ebb of the waters of Lake Taneycomo, and rocking gently in rhythm with waves made by passing motorboats. Other than the mooring cables, the sole physical connection with the land is a walkway or gangplank, one end of which is attached to the deck of the dock and the other of which rests upon (but is not attached to) the sloping stone pavement. This gangplank thrusts out on terra firma approximately six to eight feet, depending, of course, upon the varying water level of the lake and whether the dock is riding close to shore or out from it. Such gangplank is the umbilical cord which carries all of the business from the shore onto the dock, and the actual business with the customer, at least theoretically, is done on the floor of the dock and beyond the city limits, which stop at the water's edge.
Id. at 494-95. Unfortunately, while this situation sounds remarkably similar to the one described in your request, Owen provides little guidance: the court dodged the issue by ruling the dock-owner had stipulated in a previous lawsuit that the ordinance was valid and applied to him. Id. at 496.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] You indicate in your request that "strictly speaking, the city limits end at the high water mark on the bank of a river." I have found no Arkansas authority supporting this proposition. Admittedly, the state generally owns the land below the high-water mark of a navigable body of water. McGahhey v. McCollum, 207 Ark. 180, 179 S.W.2d 661 (1944); Op. Att'y Gen. 95-226. However, the state has in the past owned a great deal of land that wound up within city limits by the state-approved mechanisms of incorporation and annexation. Subsections 14-40-302(a)(4) and (5) of the Code sanction annexation "for the extension of needed police regulation" and when property is adaptable "for prospective municipal uses" — both possibly applicable in this case.